73 N.J. Super. 253 (1962)
179 A.2d 564
CARPENTERS AND MILLWRIGHTS LOCAL UNION NO. 2018, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA (AFL-CIO), AN UNINCORPORATED ASSOCIATION, PLAINTIFF,
v.
RIGGS-DISTLER & COMPANY, INC., ET ALS., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 9, 1962.
*254 Mr. Joseph P. Dunn, attorney for plaintiff.
Messrs. Haines and Schuman, attorneys for defendant Riggs-Distler & Co., Inc.
Mr. Richard J. Casey, attorney for defendants Thomas Pagan, Inc., et als.
LARRABEE, J.C.C. (temporarily assigned).
Plaintiff union has instituted the current action to recover on behalf of member employees represented by it from defendant contractors the total unpaid amount of a wage rate raise from May 1, 1958 to August 12, 1958.
Defendant contractors now move to dismiss the suit on the ground that this court lacks jurisdiction, claiming that the National Labor Relations Board has exclusive jurisdiction of the subject matter, relying on briefs, admissions *255 and answers to interrogatories. No formal admissions made by the plaintiff have been filed. Plaintiff has filed a brief containing statements which may be considered admissions for the purpose of this motion. Plaintiff has answered interrogatories listing the names of 15 contractors, not including the defendants, who signed a new contract between May 1, 1958 and August 12, 1958 and had a contract with the union prior to that time. Plaintiff further admitted negotiating with Associated Contractors but did not recognize the group as an exclusive bargaining representative.
Plaintiff contends that for some time prior to May 1, 1958 defendants used a hiring hall to obtain carpenters and millwrights; that there is a custom in the industry that by so doing the plaintiff agreed to abide by the prevailing wage rates; that the prevailing rate became $3.80 on May 1, 1958, but defendants refused to pay the increase until after a strike on or about August 1, 1958. Plaintiff further contends that defendants agreed to pay the retroactive wages to all employees furnished to them through the hiring hall from May 1, 1958 to August 12, 1958.
Factually, it appears that plaintiff union had some contracts with individual contractors prior to May 1, 1958, on a $3.55 basis, but no written contract with the individual defendant contractors. While referred to as a collective bargaining agreement by plaintiff, actually it appears to be a series of individual contracts with 15 contractors. It does not appear that the union was the exclusive bargaining agent, either directly or through membership in Associated Contractors.
Defendants associated with defendant Riggs-Distler admit that prior to May 1, 1958 there existed a collective bargaining agreement in effect between the local union and the Associated Contractors of Monmouth and Ocean Counties, an employee bargaining group; that this agreement set the wage scale for carpenters at $3.55 an hour. The expiration date of the agreement was April 30, 1958. They contend that defendant contractors had no contract with *256 the local union and paid their carpenters $3.55 an hour because it was the prevailing rate in the area; that the plaintiff failed to give defendants notice of the proposed raise and failed to bargain; that plaintiff has no right to assert claims on behalf of its members, and that this court has no jurisdiction.
Defendants associated with Thomas Pagan, Inc. contend that there was no contract between the local union and the Associated Contractors of Monmouth and Ocean Counties, and refer to answers to interrogatories propounded by them, numbers 3, 4, and 7, wherein the union answers that it never recognized Associated Contractors as the exclusive bargaining agent. Further, that the pleadings show that no contract was made, but the issue is whether or not a contract was effected.
It is contended in plaintiff's brief, but not in the complaint or pretrial order, that prior to the expiration date of the existing contracts the local union served notice on all contractors, whether parties to the wage agreements with the local union or not, under the provisions of section 8(d)(4) of the Labor Management Relations Act, to the effect that the union proposed to raise the wage scale to $3.80 an hour.
From answers to interrogatories it appears that subsequently, in the course of negotiations between the Associated Contractors and the union, an offer of a 10¢ per hour increase over the then prevailing rate of $3.55 was made by the Associated Contractors on May 3, 1958, effective May 1, 1958, which offer was declined by the union under date of May 8, 1958. In the letter of refusal the union stated that the rate would be $3.80 per hour effective May 1, 1958, claiming that the $3.80 rate had been agreed to by contractors doing work in Ocean County for the past number of years.
The increase in prevailing rate was not recognized by the Department of Labor until after September 3, 1958. On September 5, 1958 the union was denying that the *257 Associated Contractors, together with the union, had in the past established wages and working conditions. It contended that collective bargaining in the area had always been on an individual basis. The union now sues for the raise of 25 cents per hour for the employees from May 1, 1958 to August 12, 1958.
To decide whether or not the court has jurisdiction the issues in the case must be examined to determine whether they involve basic legal problems customarily dealt with by the state courts, or do they involve problems that are peculiar to labor relations and the Labor Management Relations Act.
Some of the issues raised are as follows:
1. Has the state court jurisdiction?
2. Section 8(d)(4) of the act requires that 60 days' written notice be given of a proposed termination or modification. Some of the defendants allege that no such notice was given. Plaintiff contends that proper notice was given.
3. Was the action of the union in raising the rate to $3.80 per hour on May 1, 1958 effective, since it was unilateral in the sense that it was not agreed to by the individual contractors?
4. Has the union failed to bargain in good faith regarding the terms and conditions of employment, as required by section 8B(2) and section 8D of the Labor Management Relations Act?
5. Under the provisions of that act has the union any right to assert the individual rights of its members?
The main issue is whether or not the National Labor Relations Board has pre-emptive jurisdiction over the action. The Garmon case has established the policy of the U.S. Supreme Court on this issue. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). This was a case of damages awarded as a result of peaceful picketing, and consequently a tort rather than contract case. The court in its opinion refers to the subject matter of the case as "an activity," and as *258 a result, viewing the practical difficulties created by the decision, its future application may be restricted.
These practical difficulties are that in a wide area the decision forces a plaintiff to obtain a ruling from the Board that it does not have jurisdiction, before a state or federal court should accept an action. Since calendars are loaded, a plaintiff may find himself out of time if he chooses the wrong forum. Trial courts are inclined to limit the application of a rule policy that creates awkward problems. Compare the approach of the California Supreme Court in Grunwald-Marx, Inc. v. Clothing Workers, 52 Cal.2d 568, 343 P.2d 23, 44 L.R.R.M. 2628 (1959).
But the rationale of the Garmon case is obvious. It frankly states that its policy is to refer actions concerning labor disputes to the N.L.R.B. because otherwise there will be inconsistent rulings by the state courts, many of which, including the present one, will be lacking available reported decisions to guide them. In today's greatly expanded corpus of the law, specialization has advantages in this as in many other fields. The rationale of the Garmon case is applicable to contract actions as well as tort actions.
When the controversy involves interpretation of the Labor Management Relations Act, and consequently is at least arguably subject to the act, the state and federal courts must defer to the exclusive competence of the National Labor Relations Board and concede it primary jurisdiction, Garmon, supra.
To determine the right of the parties in this action it would be necessary to refer to the Labor Management Relations Act and its provisions. If a contract existed, it came into being as the result of trade custom. Customs of the trade have been used to interpret existing contracts where clearly established and known to the parties, or so notorious in the trade as to charge them with notice. See 9 Wigmore on Evidence (3d ed), § 2440, p. 127. The principle is given wider scope by section 1-205(2) Uniform Commercial Code. While hiring labor may or may not be regarded as *259 a commercial practice, the principle expressed in the Code is fundamentally sound and should be applied to the present problem.
Accepting the plaintiff's contention that the defendants used the hiring hall prior to May 1, 1958 (complaint, paragraph 7) then, accepting the plaintiff's theory that use of the hiring hall established a contract by custom, a contract existed between the union and the defendants prior to May 1, 1958. Further, the rate raise required renegotiation of an existing contract, and consequently the National Labor Relations Act applies.
Under the provisions of that act the union was required to bargain for the 25¢ increase. The question of whether or not it did bargain for it requires the evaluation of bargaining procedures which would most naturally be a function of the National Labor Relations Board. This issue is directly presented in this case, whereas it was only indirectly a matter of concern to the state court in Grunwald-Marx, Inc. v. Clothing Workers, supra. The issue before the court is not simply breach of contract. It is the renegotiation of an old contract for which the National Labor Relations Act raises all requisites for the negotiation of a new contract, namely notice or demand, a showing, if demanded, that the union represent a majority of the employees, and good faith bargaining. The issue of whether or not adequate notice was served requires no special competence. The state court could decide this issue with no difficulty.
The union would have been able to sue in the state court had the action been based on an existing written contract between the union and the contractors and no problem raised regarding bargaining in good faith. The case of Assoc. of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955), does not prevent a suit in the New Jersey courts in which unincorporated associations may sue for the benefit of their third-party members. See N.J.S. *260 2A:64-1; Drewen v. Bank of Manhattan, 31 N.J. 110 (1959).
Since there remains the issue of bargaining in good faith, which is at least arguably subject to the Labor Management Relations Act, the motion for summary judgment of dismissal is granted as to that part of plaintiff's claim which required renegotiation of a pre-existing agreement and in which the issue of formulation of an agreement was raised.
There is, in addition, the question of whether or not a contract was effected by correspondence. Plaintiff union's complaint, paragraph 13, further sets up a contention that defendants agreed on or about August 12, 1958 to pay the retroactive pay. The basis for this contention appears to be a letter from Thomas Pagan, Inc., dated June 2, 1958, to the union. In this letter Pagan agreed to pay retroactively as agreed upon by the union and the legal bargaining agent for contractors, or an uncontested determination by the Secretary of Labor establishing prevailing rates of the area. Plaintiff also relies on a letter from Cresco Builders, Inc., dated June 5, 1958, to the union. In this letter Cresco agreed to pay any increase and meet all obligations of a new contract between the union and Associated Contractors if the associated contractors are the recognized bargaining agent.
Defendants contend that the union never recognized the Associated Contractors as the exclusive bargaining representative of employers working in Ocean County (see answer to Interrogatory #7).
However, the Pagan and Cresco letters do not condition their promises upon Associated Contractors' being recognized as the exclusive bargaining representative of the contractors. Under the Pagan letter the decision made by the union and the responsible bargaining agent would control. The letter does not limit the responsible bargaining agent to Associated Contractors. There is no affirmative proof by the defendants to exclude the possibility that an *261 agreement was made with another authorized agency. Further, the union's answer, that the Associated Contractors were never recognized by it as the exclusive bargaining agent, does not eliminate the possibility that they were the bargaining agent for a group which was a minority group or lacked the designation of exclusive agent.
That part of plaintiff's claim based on the correspondence, alleging a complete agreement, remains, and that part of the complaint is not stricken. It does not involve the issue of collective bargaining.