CAROL S. MICHELY, Plaintiff-Appellee, *v.* ALFRED ANTHONY and CLAUDIA ANTHONY, Defendants and Third-Party Plaintiffs-Appellants, and ALBERT F. MICHELY, Third-Party Defendant-Appellee

NO. 7003

JUNE 2, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY HAYASHI, C.J.

This is an appeal from the judgment filed January 5, 1978 cancelling the sub-agreement of sale entered into between the appellees and appellants.

At issue are: (1) whether the findings of fact and conclusions of law are in error so as to warrant reversal of the judgment, and (2) whether the court erred in directing cancellation of the sub-agreement of sale. We find in the negative on both issues and affirm the judgment.

On July 20, 1970, Albert Michely, the third-party defendant-appellee in this action, purchased the property at 7036 Kalanianaole Highway on an agreement of sale from Robert and Patricia Pettera. The agreement of sale provided, *inter alia,* for a payment of the principal balance on July 1, 1975. However, on June 30, 1972, Albert Michely sold his interest in the property to Alfred and Claudia Anthony, the defendants and third-party plaintiffs-appellants, for $94,000.00 under a sub-agreement of sale. He received a $10,000.00 down payment with the principal balance due March 1, 1975, four months before he would have been required to pay the principal balance due on the agreement of sale with the Petteras. Sometime between the making of the sub-agreement of sale to the Anthonys and its due date, Albert Michely was married; and on September 1, 1974, he assigned his interest in the subject property to his wife, Carol Michely, the plaintiff-appellee. Since the Anthonys failed to make the final $84,000.00 payment under the sub-agreement of sale on March 1, 1975, Carol Michely initiated this action on July 31, 1975, to cancel the sub-agreement of sale dated June 30, 1972. On September 16, 1975, Carol Michely satisfied her obligations under the agreement of sale with the Petteras by paying them $16,658.27 and assuming their mortgage of $34,730.72.[1] Subsequently, on September 30, 1975, the Michelys and the Anthonys appeared before Judge Arthur Fong, and in an attempt to resolve the differences arising out of Carol Michely's cancellation action, reached certain agreements; however, no formal order was ever submitted to the court for the judge's signature. The agreement

---

[1] The principal balance to the Petteras was due on July 1, 1975.

reached was to grant the Anthonys an extension of time to make the final payment, provided the Anthonys meet certain conditions. The conditions were never fulfilled by the Anthonys.

Thereafter on October 19, 1975, the Anthonys succeeded in securing a purchaser for the property (Jimmy C. Lo and Mary K. Lo, husband and wife) for the consideration of $93,250.00. This transaction was scheduled to close on December 10, 1975. In order to allow the sale of the residence to go through from Carol Michely to the Los, the Anthonys agreed to relinquish their position in this transaction in consideration of receiving certain sums of money. On December 26, 1975, the Michelys and the Anthonys executed a written letter of agreement prepared by counsel for the Anthonys. The letter of agreement dated December 26, 1975 provides in part as follows:

This confirms the terms of the agreement which has been reached between the Anthony's [sic] and the Michely's [sic] concerning cancellation of the Sub-Agreement of Sale described above.

In consideration of the mutual promises contained herein, and subject to the making of a new contract between the Michely's and the Lo's [sic] by which the Michely's would sell the property described in the said Sub-Agreement of Sale directly to the Lo's, the Anthony's and the Michely's have agreed as follows:

1. The parties do hereby cancel the said Sub-Agreement of Sale and, except as provided herein, they do hereby release and discharge each other from all rights and obligations stated therein or arising therefrom.

2. In consideration of said cancellation, the Michely's shall cause the sum of $3,000.00* to be paid to the Anthony's out of escrow upon the closing of the sale of the property from them to the Lo's, and a copy of this letter may be presented to escrow as escrow instructions to that effect.

3. In the event that the closing of the sale of the property from the Michely's to the Lo's does not take place for any reason by April 1, 1976, the Michely's agree to pay the said sum of $3,000.00,* with interest at 7¾% per annum from January 10, 1976, to the Anthony's upon demand, that the claim of the Anthony's for that sum shall be a lien upon the Michely's interest in that property and that the Anthony's, on

behalf of the Michely's may record an appropriate instrument at the Bureau of Conveyances reflecting the existence of that lien.

4. Immediately upon presentation by the undersigned attorney for the Anthony's, the Michely's, and each of them, shall execute and cause their attorney, if any, to execute an appropriate dismissal with prejudice of Michely v. Anthony, Civil No. 45815, pending in the Circuit Court of the First Circuit, State of Hawaii, each party to bear its own costs.

---

*less amounts necessary to satisfy the judgment pending against Alfred Anthony by CBM of the Pacific.

Immediately thereafter, because of problems not relevant to this appeal, the Michely-Lo deal collapsed.

By an agreement entered into on December 27, 1975, Carol Michely paid the sum of $3,000.00 to the Los in consideration of the Los' cancellation of the October 19, 1975 DROA and the release by the Los of all their claims against the Michelys and the Anthonys.

After a jury-waived trial, Judge Robert Chang found that the Anthonys were in default and that Carol Michely was entitled to cancel the sub-agreement of sale and retain all sums paid by the Anthonys as liquidated damages but was required to pay the sum of $3,000.00 to the Anthonys in accordance with the December 26, 1975, letter of agreement.

The Anthonys contend that findings of fact Nos. 4, 5, 10, 12, and 15 are clearly erroneous and, therefore, warrant reversal. Rule 52(a)[2] of the Hawaii Rules of Civil Procedure (HRCP) provides that such findings should not be set aside on review unless they are found to be clearly erroneous and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. We will respond to each of their contentions.

Findings of fact Nos. 4 and 5 read as follows:

4. On September 1, 1974, Third Party Defendant assigned

---

[2] HRCP Rule 52(a) provides:

Rule 52. FINDINGS BY THE COURT. (a) *Effect.* In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon. . . .

. . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

all of his right, title and interest in and to the subject property and the said June 30, 1972 Sub-Agreement of Sale to the Plaintiff herein. The Defendants consented in writing to said assignment.

5. Defendants failed to make the final $84,000.00 principal payment on said Sub-Agreement of Sale on March 1, 1975. Defendant ALBERT ANTHONY acknowledged this default in a letter to Third-Party Defendant dated March 6, 1975.

The Anthonys contend that because their consent to the assignment was given with the condition that the March 1, 1975 payoff date would be extended, both of these findings are erroneous. However, the record before us, including the relevant documents and the testimonies of all the parties involved in the transaction, gives no support to the Anthonys' contention. Albert Michely testified that no such agreement was made, nor is there any written documentation evidencing any extension of the payoff date. Alfred Anthony's letter to Albert Michely dated March 6, 1975, establishes that the Anthonys clearly understood the payoff date was March 1, 1975, and that on that date Carol Michely did not receive the $84,000.00 principal payment. The court was entitled to disbelieve the Anthonys' testimony to the contrary. Rule 52(a), HRCP; *State v. Rezac*, 1 Haw. App. 455, 620 P.2d 759 (1980); *Lennen & Newell, Inc. v. Clark Enterprises, Inc.*, 51 Haw. 233, 456 P.2d 231 (1969).

Finding of fact No. 10 provides:

10. An Agreement was reached by the parties at a court hearing before Judge Fong on September 30, 1975, regarding settlement of the lawsuit and an extension of the Sub-Agreement of Sale payoff date. No court order or stipulation for dismissal of this case was ever filed. Defendants failed to abide by the terms of the Agreement by failing to pay the Sub-Agreement of Sale arrearage, Plaintiff's attorney's fees, and the insurance premium covering the subject property.

The Anthonys argue that because a buyer for the subject property was found subsequent to the agreement of September 30, 1975, they were no longer required to comply with the terms of the agreement and their counsel advised them to pay the amounts due into an escrow account. It remains undisputed that the Anthonys failed to abide by the terms of the agreement and there is no evidence to support their contention that they were somehow excused from their obligations under the agreement by the appear-

ance of a buyer in October 1975. Interestingly, the Anthonys do not contest finding of fact No. 7 wherein the court found that the Anthonys' last monthly payment on the sub-agreement of sale was made on July 8, 1975. In any event, neither the Anthonys nor their counsel could go on record to state that, in fact, they had made the payments required under the agreement of September 30, 1975, into an escrow account. Accordingly, we are not left "with a definite and firm conviction that a mistake has been committed by the trial court." (Citations omitted.) *Ed Klein, Inc. v. Hotel Kaimana,* 51 Haw. 268, 457 P.2d 210 (1969).

Findings of fact Nos. 12 and 15 provide:

12. On December 26, 1975, the Plaintiff, Defendants, and Third-Party Defendant executed a written letter agreement, the terms of which cancelled the subject Sub-Agreement of Sale in consideration of Plaintiffs [sic] payment of $3,000.00 to Defendants (Plaintiff's Exhibit 17). This written agreement superseded all previous agreements by and between the parties.

15. On January 2, 1976, Defendants' counsel prepared settlement documentation and transmitted same to Plaintiff's counsel for execution by Plaintiff. In due course, these documents were executed by Plaintiff and Third-Party Defendant and were returned to Defendants [sic] attorney, together with Plaintiff's checks (Plaintiff's Exhibit 20A-20E). Defendants refused to sign the settlement documentation, including the Cancellation of Sub-Agreement of Sale, and further refused to accept Plaintiff's said checks.

The Anthonys seem to be arguing that the trial court erred in finding that the December 26, 1975 letter of agreement (that was signed by all parties and counsel) superseded the September 30, 1975, agreement reached in Judge Fong's chambers because of the conflicting testimony given by Mr. Anthony and his attorney at that time, Mr. Jay M. Fidell. Indeed, both briefs cite testimony of Mr. Fidell to support their respective contentions with regard to the disputed continuing validity of the September 30, 1975, agreement in light of the agreement reached in the letter of December 26, 1975. The Anthonys argue that the agreement of December 26, 1975, is of no effect because it was conditioned on the sale of the subject property by the Michelys to the Los, which sale did not materialize. The Anthonys' refusal to sign the settlement documents and accept

Carol Michely's tender of $3,000.00 payment pursuant to the December 26, 1975, letter of agreement, was apparently based on their belief that the agreement was not valid. However, paragraph 3 of the agreement in question made provisions for settlement of the matter if *for any reason* the contemplated sale could not be consummated. Thus, the condition the Anthonys rely upon to nullify the agreement is, in effect, no condition at all.

There was considerable testimony given on the effects of the December 26, 1975 letter. The attorney who drafted the instrument for the Anthonys was examined extensively by counsel and by the court.

In light of the evidence introduced and the conflicting testimonies given, we cannot conclude that the findings are clearly erroneous. *Lennen & Newell, Inc. v. Clark Enterprises, Inc., supra; Wick Realty, Inc. v. Napili Sands,* 1 Haw. App. 448, 620 P.2d 750 (1980).

The Anthonys' final assignment of error is that cancellation of the sub-agreement of sale was not warranted in that the court, utilizing its equity power, could have avoided forfeiture of the contract by awarding damages to Carol Michely. The order of cancellation, they argue, was, therefore, an abuse of discretion. We disagree.

The granting of equitable relief is a matter addressed to the sound discretion of a trial court, and its decision will not be set aside unless manifestly against the clear weight of evidence. *Sandstrom v. Larsen,* 59 Haw. 491, 583 P.2d 971 (1978); *Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978).

It is well settled in contract law and equity jurisprudence that the court may enforce a forfeiture where parties enter into a contract whose terms clearly provide for forfeiture in the event of a material breach of its covenants. 17 AM. JUR.2d *Contracts* § 499; *Food Pantry, Ltd. v. Waikiki Shopping Plaza, Inc.,* 58 Haw. 606, 575 P.2d 869 (1978).

From the record before us, we find no basis to conclude that the court abused its discretion in ordering cancellation. *Food Pantry, Ltd. v. Waikiki Shopping Plaza, Inc., supra.*

Accordingly, the judgment is affirmed.

*Peter A. Lee (Everett Cuskaden* with him on the brief, *Oliver & Lee* of counsel) for plaintiff-appellee and third-party defendant-appellee.

*Richard H. Lachmann (Kelso, Spencer, Snyder & Stirling* of counsel) for defendants and third-party plaintiffs-appellants.