JAMES STEWART ROMIG, Plaintiff-Appellee, *v.* DENIS deVALLANCE, LYNETTE RHELMA HENDERSON deVALLANCE and VIDEO NETWORK PRODUCTION, INC., Defendants-Appellants

NO. 7649

CIVIL NO. 52770

DECEMBER 17, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

## OPINION OF THE COURT BY BURNS, J.

The Buyers appeal the entry of summary judgment against them which allowed the Seller to keep all amounts paid by Buyers on an agreement of sale of a residential condominium.

The dispositive issue is whether a buyer under an agreement of sale of an interest in land has a right to require a seller to provide an assurance of due performance whenever a reasonable ground for insecurity arises with respect to the seller's performance. We answer yes, and we affirm in part and reverse and remand in part.

Via agreement of sale (A/S) dated January 7, 1976, Romig (Seller) agreed to sell and Mr. and Mrs. de Vallance and Video Network Productions, Inc. (Buyers), agreed to buy Dwelling No. 3 of the Leahi Estates Horizontal Property Regime,[1] together with furniture, fixtures, and appliances, for $130,000.00 payable as follows: $20,000.00 plus 9% per annum interest on April 1, 1977; and $110,000.00 plus 9.75% per annum interest via $945.08 per month payable on the 7th day of each month commencing February 7, 1976, and the balance to be paid in full on January 7, 1981. Buyers also agreed to pay Seller a monthly sum to cover prorata real property taxes and lease rent.

By letter dated March 11, 1976, Buyers' attorney advised Seller's attorney of eighteen construction and appliance "deficiencies" and of the Buyers' intent to withhold all payments due after March 1976 until correction thereof.

The Seller's attorney responded in relevant part:

[Seller] did not warrant that the house was perfect, and he has no obligations to do "restorative work". [Seller] will provide the buyers with the benefit of any warranties existing on the appliances and will assign to the buyers any rights he has to require the contractor to correct alleged construction deficiencies.

---

[1] Apparently, this condominium consisted of detached two-story dwellings.

Sometime after September 30, 1976, Video Network Productions, Inc., wrote Seller apologizing for nonpayment of the August 1976, September 1976, and October 1976 payments and advising Seller:

[T]he house was not built within the confines of [Lot 3] and encroaches on an adjacent lot. The encroachment is minimal I am advised. However, this condition must be corrected before we could transfer a good title to a third party. . . .

The purchase agreement required that the property be surveyed at your expense. This has not been done, although several requests have been made. . . .

The [Buyers] have had absolutely no luck in getting the contractor to honor his workmanship, and the suppliers will not honor their warranties.[2] . . .

[W]e have placed the house back on the market. . . . [W]e would like to resolve the several problems . . . *before* the house is sold. . . .

(Footnote added.)

On April 14, 1977, Seller's attorney wrote Buyers citing their failure to make monthly payments "since November 1976" and to make the $20,000.00 plus interest payment due April 1, 1977.

On April 20, 1977, Buyers' attorney wrote Seller's attorney stating, *inter alia,* his belief that the payments would be made current and his "need to know whether [Seller] has resolved the property line problem."

In a letter to Seller's attorney, dated April 27, 1977, and mailed on April 29, 1977,[3] Mr. de Vallance paid $5,000.00 and stated his understanding "that if de Vallance/Video Network Productions waiver [sic] all claims for property damage and construction faults on the dwelling [Seller] will agree to extend until May 31st, 1977 the demand of payment for the [$20,000.00] plus interest now due under our [A/S]."

Seller's attorney responded in a letter dated May 16, 1977,[4] in

---

[2] Apparently the Buyers were not aware of their rights under Hawaii Revised Statutes Chapters 444 (1976) and 487 (1976).

[3] [4] In his memo filed in support of his June 6, 1979, motion for summary judgment, Seller's attorney says that on April 29, 1977, Seller sued to cancel the A/S and that a notice of dismissal of that case was filed on May 16, 1977. However, the record in that case has not been made part of the record in this case.

which he stated, *inter alia,* that the monthly payments were also not current and that "in consideration for the waiver of the vendee's claims for property damages and construction faults on the dwelling, as set forth in Denis de Vallance's letter of April 27, 1977, [Seller] has agreed to grant the [Buyers] an extension of time to remedy the defaults until May 31, 1977."

On June 24, 1977, Buyers paid $5,584.00. By letter dated August 16, 1977, the Seller demanded payment "on or before September 1, 1977," of amounts then due.

On October 11, 1977, Seller sued to cancel the A/S because of the Buyers' failure to make payments due. Buyers filed an answer in which they asserted the defenses of fraud and misrepresentation, failure of consideration, breach of warranties, and breach of contract.

The Buyers also filed a counterclaim complaining of the Seller's breach of the A/S and "his express and implied warranties of good title and marketability and fitness for use" specifically as follows: faulty design, termite infestation, roof leaks, defective and inoperable appliances and plumbing, and of the encroachment of Dwelling No. 3 on Lot 4.

The Buyers prayed for alternative relief: (1) for rescission and restitution; or (2) for an order requiring Seller to convey to Buyers the necessary strip of land, for an award of special damages, and for costs and attorney's fees.

The Seller's answer to the counterclaim neither admitted nor denied the alleged deficiencies but denied the allegation that the Buyers "have repeatedly requested the [Seller] to correct the defect in [Seller's] title caused by the encroachment of Dwelling No. 3 on Lot 4 and the [Seller] has refused and neglected to take such corrective action." It also raised the defenses of the statute of limitations, laches, waiver and estoppel, and asked for the dismissal of the counterclaim.

On February 27, 1978, Seller filed a motion for partial summary judgment asking for (1) cancellation of the agreement of sale; and (2) restoration of possession of Dwelling No. 3 to Sellers. In a memorandum, Seller explained the basis for his motion as follows:

Plaintiff has sued for cancellation of the Agreement of Sale. Defendants have countersued for rescission of the Agreement of Sale. There is no genuine issue as to any material fact which

would affect that portion of the relief sought by both parties. All disputed issues of fact raised by the pleadings filed herein affect only the proper disposition of the amounts paid by Defendants to Plaintiff under the Agreement of Sale. Plaintiff claims that such amounts should be retained as liquidated damages for the breach of the Agreement of Sale or as rent. Defendants claim that such amounts should be returned to them together with additional amounts for damages allegedly suffered. It is clear that the resolution of the dispute concerning the proper disposition of the amounts paid by Defendants should not delay the cancellation of the Agreement of Sale requested by both parties.

A prompt cancellation of the Agreement of Sale will simplify the resolution of the remaining issues by settling once and for all the relevant period of occupancy of the Property for which the Defendants must account to the Plaintiff. It will also terminate the continued accrual of interest under the Agreement of Sale during the pendency of this action. Finally, it will eliminate the risk of deterioration or damage to the Property during the pendency of this action.

Buyers filed a memorandum opposing the motion in which they alleged the following issues of material fact: (1) Whether Dwelling No. 3 partially encroached on Lot 4 thus rendering the A/S void or voidable; (2) Whether Seller breached a warranty of good title; (3) Whether Seller breached a warranty of fitness for use; and (4) Whether Buyers are entitled to a refund of all amounts paid to Seller on the A/S and to others because of the dwelling's deficiencies.

Seller's motion was heard on March 15, 1978. We have not been provided with a transcript but the clerk's minutes state, *inter alia,* as follows: "MOTION GRANTED. Rights of the parties to the sums of money on the Agreement of Sale to be determined at a later date on the issue of damages."

An Order Granting Motion for Partial Summary Judgment and Cancelling Agreement of Sale was entered on March 30, 1978,[5] ordering, *inter alia:*

4. Plaintiff JAMES STEWART ROMIG be restored to possession of the property covered by said Agreement of Sale immediately;

---

[5] Buyers are not appealing this partial summary judgment.

5. All other issues raised by the pleadings filed herein be reserved for further adjudication.

On January 31, 1979, Buyers filed a pretrial statement, stating, *inter alia:*

### B. STATEMENT OF LEGAL ISSUES

1. *Legal Issues in Dispute.*

(a) As to Plaintiff's claim, the legal issues are whether Defendants breached the Agreement of Sale and, if so, whether the Plaintiff is entitled to retain the amounts paid by the Defendants under the Agreement of Sale as liquidated damages.

(b) As to the Defendant's Counterclaim, whether the Plaintiff was guilty of negligence, fraud and misrepresentation in inducing Defendants to execute the Agreement of Sale; whether the Plaintiff is guilty of breach of express and implied warranties of good title and marketability and fitness for use, and whether the Defendants are entitled to a rescission of the Agreement of Sale and restitution of all sums of money which they have paid to Plaintiff under the Agreement of Sale, plus additional monies expended by Defendants for repairs, replacements and termite fumigation.

On June 4, 1979, Seller filed a pretrial statement stating, *inter alia:*

### B. STATEMENT OF LEGAL ISSUES

Plaintiff agrees with the statement of issues as set forth in the Pre-Trial Statement of Defendants.

On June 6, 1979, Seller filed a motion for summary judgment in which he stated, *inter alia:* "Based on . . . waiver, [Seller] . . . should be granted summary judgment as to the affirmative defenses and counterclaims of defendants." He further claimed entitlement "to retain as liquidated damages or agreed on rental all payments made under the Agreement of Sale, and . . . costs and attorney's fees."

Buyers opposed the motion and submitted Mr. de Vallance's affidavit in which he stated, *inter alia:*

That the matter of the encroachment . . . was first discovered by the [Buyers] by a survey prepared by Sam O. Hirota, Inc. after the [Seller] and [Buyers] executed [the A/S];

That Affiant signed a certain letter dated April 27, 1977 . . . in express reliance on the promise of the [Seller] to correct the encroachment. . . .

That [Seller] expressly promised to correct the encroachment . . . but has never corrected the encroachment. . . .

By order dated September 27, 1979, the trial court granted Seller's motion for summary judgment, granted Seller judgment on his complaint, dismissed Buyers' counterclaim, and awarded Seller costs and fees.

The parties agree that the letters of April 27, 1977, and May 16, 1977, constitute a binding waiver by the Buyers. The question is, what was waived? Did the Buyers' waiver of "all claims for property damage and construction faults on the dwelling" waive all of their rights against Seller?

The Buyers contend that they waived all defenses and claims except those which arose out of the fact that the dwelling was not completely on the lot assigned to the dwelling on the Condominium Map. The Seller contends that the Buyers' waiver included the partial failure of title issue. We agree with the Buyers. In the context of this case, the waiver of "all claims for property damage and construction faults on the dwelling" is not a waiver of rights which arise out of the fact that the dwelling was partially constructed on the wrong lot.

Consequently, the summary judgment is invalid insofar as it cut off the Buyers' rights arising out of the Seller's alleged inability to convey good title to all that was purchased. In all other respects the summary judgment is valid.

The next question is, what are Buyers' rights with respect to this issue? The A/S requires Seller "[u]pon full payment . . . [to] cause to be executed and delivered to Purchaser a good and sufficient conveyance of [Dwelling No. 3], free and clear of all encumbrances. . . ." Thus, according to the A/S, the Seller is not obliged to be able to convey clear title until full payment.

In such a situation, have the Buyers no remedy? Must they pay in full even though they have information that reasonably indicates that the Seller will not be able to perform as promised in the A/S when it is time for him to perform? We think the Buyer is entitled to a remedy in such a situation.

Although this case involves a transaction in land, whereas Article 2 of the Uniform Commercial Code (Hawaii Revised Statutes § 490:2) applies to transactions in goods, we deem it appropriate to analogize[6] the Uniform Commercial Code's sections 2-609 and 2-610 and to apply them to this case, subject to all necessary tailoring.[7]

Hawaii Revised Statutes §§ 490:2-609 and 2-610 provide in relevant part:

§ 490:2-609 *Right to adequate assurance of performance.* (1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.

(2) Between merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.

(3) Acceptance of any improper delivery or payment does not prejudice the aggrieved party's right to demand adequate assurance of future performance.

(4) After receipt of a justified demand failure to provide within a reasonable time not exceeding thirty days such assur-

---

[6] *See Carpenter and Millwrights Local Union No. 20.8 v. Riggs-Distler and Co.,* 73 N.J. Super. 253, 179 A.2d 564 (1962), rev'd on other grounds, 40 N.J. 97, 190 A.2d 844 (1963) (where the New Jersey Superior Court applied the Uniform Commercial Code to determine the rights of parties in a labor action); *In Re Yale Express System, Inc.,* 370 F.2d 433 (1966) (where a New York federal court chose to apply the Uniform Commercial Code in a reclamation proceeding, finding the official comments "powerful dicta"); *U.S. v. Haas and Haynie Corp.,* 577 F.2d 568 (1978) (where the Court of Appeals, Ninth Circuit, in deciding a Hawaii District Court case pursuant to the Miller Act, applied the Uniform Commercial Code on a mixed sales and service contract). *See also The Uniform Commercial Code; Impact on the Law of Contracts;* 65 COLUM. L. REV. 880; 881 (1965).

[7] The proposed Uniform Land Transactions Act also used a tailored version of the Uniform Commercial Code §§ 2-609 and 2-610. *See* Uniform Land Transactions Act (U.L.A. § 2-403 [Right to Adequate Assurance of Performance] and § 2-404 [Anticipatory Repudiation]).

ance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.

§ 490:2-610 *Anticipatory repudiation.* When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may

(a) For a commercially reasonable time await performance by the repudiating party; or

(b) Resort to any remedy for breach (section 490:2-703 or section 490:2-711), even though he has notified the repudiating party that he would await the latter's performance and has urged retraction; and

(c) In either case suspend his own performance or proceed in accordance with the provisions of this Article on the seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods (section 490:2-704).

Consequently, there are unresolved factual issues, some of which are:

1. Did Buyers have reasonable grounds for insecurity with respect to the performance by Seller?

2. After Buyers demanded in writing adequate assurance of due performance, did Seller provide Buyers with adequate assurance? (If not, then by analogy to Uniform Commercial Code § 2-609(1) Buyers' failure to pay, if reasonable, is not a breach.)

3. Did Seller's failure to provide Buyers with adequate assurance of due performance amount to a repudiation of the contract? (If so, then by analogy to Uniform Commercial Code § 2-610 the Seller is in breach.)

This case has been reduced to a dispute over entitlement to the money paid by the Buyers to Seller. No decision can be made on that issue until it is first decided whether Buyers or Seller or both or neither are in breach. When it is decided whether one or both sides are in breach, then this case can be decided pursuant to the precedents contained in *Jenkins v. Wise*, 58 Haw. 592, 574 P.2d 1337 (1978); *Gomez v. Pagaduan*, 1 Haw. App. 70, 613 P.2d 658 (1980); and other relevant cases.

The summary judgment is reversed to the extent that it cut off consideration of the Buyers' rights arising out of Seller's alleged partial failure of title.

606

To the extent that the summary judgment is not reversed, it is affirmed.

This case is remanded for further proceedings consistent with this opinion.

*Robert K. Fukuda* for defendants-appellants.

*Richard Clifton (Nicholas C. Dreher* and *Edwin L. Doernberger* on the brief; *Cades, Schutte, Fleming & Wright)* for plaintiff-appellee.