CALIFORNIA FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellee, *v.* NORMA ROSALINDE BELL, Defendant-Appellant, and FAF CANTERBURY PLACE, LTD., FREDER-ICK FIGGE, HOWARD COPELAND HILL, WILLIAM JOHN BACHRAN, LORRAINE MARIE BACHRAN, ASSOCIATION OF APARTMENT OWNERS OF CANTERBURY PLACE, by its Board of Directors, Defendants-Appellees, and JOHN and MARY DOES 1-20, and DOE PARTNERSHIPS, CORPORATIONS OR OTHER ENTITIES 2-20, Defendants, and WILLIAM JOHN BACHRAN, LORRAINE MARIE BACHRAN, Third-Party Plaintiffs-Appellees, *v.* PETER ROBERT STROMER, Third-Party Defendant-Appellant

NO. 11080

(CIVIL NO. 78514)

MARCH 20, 1987

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Defendant-Appellant Norma Rosalinde Bell (Bell) and Third-Party Defendant-Appellant Peter Robert Stromer (Stromer) (where appropriate hereinafter Bell and Stromer will be collectively referred to as Appellants) appeal from the decree entered below foreclosing an agreement of sale of real property in which Stromer was the buyer and Bell was his assignee. We vacate the decree and remand with instructions to enter an amended decree.

## FACTS

There is no dispute over the facts involved here.

On March 2, 1978, Defendant-Appellee FAF Canterbury Place, Ltd. (FAF), a California limited partnership, through Defendants-Appellees Frederick Figge (Figge) and Howard Copeland Hill (Hill), its general partners, (where appropriate hereinafter FAF, Figge and Hill will be collectively referred to as FAF) executed a promissory note and a mortgage in favor of Realty Mortgage, Inc. (Realty Mortgage), a Hawaii corporation, for the purchase of apartment 27-A in the Canterbury Place condominium apartment building located at 1910 Ala Moana Boulevard. The mortgage contained what is commonly referred to as a "due-on-sale" clause, which provided that, with certain exceptions not material here, in the event FAF were to transfer its interest without the mortgagee's consent, the mortgagee could declare the entire sum secured by the mortgage to be due and payable. Realty Mortgage promptly assigned the note and mortgage to Plaintiff-Appellee California Federal Savings and Loan Association (California Federal).

Nearly three years later, FAF sold the apartment to Stromer under an agreement of sale (agreement) for $70,000 down and a balance of

$280,000, due in full on March 1, 1984. Stromer was required to make monthly interest payments and to pay the lease rent, real property taxes and condominium maintenance fees. He also had the privilege to pay the entire balance before the agreement's maturity date. On the same day Stromer, with FAF's consent, assigned the agreement to Bell. The sale and assignment were not consented to in writing by California Federal as required by the mortgage.

Thereafter, FAF assigned its interest in the agreement and the condominium conveyance document covering the apartment to Defendants and Third-Party Plaintiffs-Appellees William John and Lorraine Marie Bachran (collectively the Bachrans). The assignment to the Bachrans was subject to California Federal's mortgage, but was not consented to by California Federal.

After California Federal learned of the assignment to the Bachrans, it wrote to FAF demanding payment in full, and also notified Figge, Hill, and the Bachrans by letter that it had done so. A letter to that effect was also sent to Bell but was never received by her. When payment was not made, California Federal filed the action below against FAF, Figge, Hill, the Bachrans, Bell, and Doe Defendants for foreclosure of its mortgage. California Federal later identified and served the Association of Apartment Owners of Canterbury Place (Association) as a defendant. Bell did not receive a copy of the complaint and only learned of the suit from Figge. Upon investigating the cause of the mortgage foreclosure and learning that it was caused by FAF's assignment to the Bachrans, Bell stopped paying interest on the agreement on September 1, 1983, and thereafter paid only the lease rent and real property taxes. Also, Bell did not pay the agreement in full on March 1, 1984.

Bell answered the complaint and filed a cross-claim for damages against FAF, Figge, Hill, and the Bachrans, charging that their acts had jeopardized her position as a buyer and that they had breached the agreement. She did not specify those acts. The Bachrans answered Bell's cross-claim and later filed their own cross-claim against her alleging that she had defaulted on the agreement by failing to make the monthly payments after September 1, 1983, and to pay the balance due on March 1, 1984. The Bachrans prayed alternatively for cancellation of the agreement and forfeiture of Bell's payments, or for foreclosure and sale of the property. They also asked for a judgment against Bell for any deficiency between the net proceeds of the sale and the balance due on

the agreement. The Bachrans also filed a third-party complaint against Stromer seeking the same relief on the ground that under the agreement Stromer remained liable for Bell's default. Stromer was served with process through the acting director of the Department of Commerce and Consumer Affairs, and notice was sent to him by mail. Stromer answered the Bachrans' third-party complaint with a general denial.

Bell answered the Bachrans' complaint alleging, *inter alia*, that the Bachrans' actions had caused California Federal to foreclose the mortgage, thus, jeopardizing Bell's interest in the apartment. She also cross-claimed against the Bachrans on the latter ground and requested rescission of the agreement of sale. The Bachrans thereafter answered Bell's cross-claim.

Before trial, Bell filed a motion to amend her answer to the Bachrans' cross-claim to add the defense that the agreement and the assignment were executed in California and her liability should be determined by California law, which prohibits a deficiency judgment in foreclosure cases. Trial was held on August 8, 1985,[1] at which time the evidence showed that all parties to the agreement and its assignment were domiciled in California and the documents were signed in that state. Bell's motion to amend was heard after the trial, and although she was allowed to amend her answer, the trial court ruled that Hawaii law governed the agreement.

On September 10, 1985, the trial court entered findings of fact and conclusions of law, holding that the mortgage was in default, and entered a decree foreclosing the mortgage and sale of the property by a commissioner (commissioner) appointed for that purpose.[2]

In separate findings of fact and conclusions of law entered on October 22, 1985, the trial court held, *inter alia*, that Bell was in default on the agreement and that she and Stromer were jointly and severally liable to the Bachrans. The trial court also held that Bell was not entitled to rescind the agreement, or to a set-off against the Bachrans of damages she allegedly incurred as a result of the foreclosures. The trial court ordered foreclosure of the agreement and sale of the apartment by the

---

[1]Counsel for FAF, Hill and Figge were allowed to withdraw by an order entered on February 13, 1985, and those parties were neither present nor represented at trial.

[2]The trial court found that Figge had filed a bankruptcy petition in the Bankruptcy Court for the Central District of California.

commissioner. The trial court also specifically held that if the proceeds of the sale were insufficient to pay all the valid claims in the action, a judgment would be entered for the deficiency. Appellants jointly filed a notice of appeal on November 20, 1985.

On December 23, 1985, the order approving the commissioner's report, confirming the sale of the apartment, and directing distribution of the proceeds was entered. The order also provided:

AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendants Bachran have and may recover from NORMA ROSALINDE BELL and PETER ROBERT STROMER, who are jointly and severally liable for the deficiency due Defendants Bachran as of the date of closing, computed as aforesaid and as may be subsequently determined by ths [sic] Court, plus interest as provided by law until paid from the date of closing, and that a deficiency judgment for said sums shall be entered herein in favor of Defendants Bachran and against Defendants Bell and Stromer upon filing of an appropriate affidavit or Motion therefor by Defendants Bachran and that Defendants Bachran have execution thereon against said Defendants Bell and Stromer according to law upon the Deficiency Judgment being filed with this Court.

AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED that default having been entered against Defendants FAF CANTERBURY PLACE, LTD. and HOWARD COPELAND HILL in favor of Defendants Bachran and Defendant Bell, default judgment shall be entered as against said Defendant FAF CANTERBURY PLACE, LTD. and HOWARD COPEI AND HILL in favor of Defendants Bachran and Defendant Bell in such amounts as shall be determined by the Court after the conveyance of the subject property to the Purchaser.

On January 22, 1986, Appellants filed an amended notice of appeal.

I.

At the outset we note an appellate jurisdiction problem regarding the amended notice of appeal.

A.

*Sua sponte,* we hold that we do not have appellate jurisdiction over

the December 23, 1985 order, since it is not final. *Hoge v. Kane,* 4 Haw. App. 246, 663 P.2d 645 (1983). The December 23, 1985 order merely indicates the trial court's intent to enter a deficiency judgment against Bell and Stromer and a default judgment against FAF and Hill, which were to follow upon the distribution of the sale proceeds. *Familian Northwest, Inc. v. Central Pacific Boiler & Piping, Ltd.,* 68 Haw. ___, 714 P.2d 936 (1986).

### B.

The October 22, 1985 decree of foreclosure contains a Rule 54(b), Hawaii Rules of Civil Procedure (HRCP) (1980) certification, and is appealable as a final order. *International Savings and Loan Ass'n, Ltd. v. Woods,* 69 Haw. ___, 731 P.2d 151 (1987); *Sturkie v. Han,* 2 Haw. App. 140, 627 P.2d 296 (1981).

### II.

We also *sua sponte* take judicial notice of the following proceedings, which took place after the December 23, 1985 order.

On February 11, 1986, the commissioner rendered his final report and accounting of the proceeds of sale, showing that the Bachrans were paid $44,950.67 from the proceeds of the sale and $3,258.66 in net rentals collected by the commissioner for October, November and December 1985. The only deduction from the rentals was for repairs in the amount of $41.34. On August 4, 1986, a deficiency judgment was entered in favor of the Bachrans and against FAF, Bell and Stromer as follows:

| | |
|---|---|
| Balance of the Purchase Price Unpaid from Sale Proceeds ................. | $ 78,252.56 |
| Interest on A/S from 9/1/85[3] to 12/31/85 ................................ | $ 71,923.64 |
| Defendants Bachrans' Attorney's Fees and Costs ............................ | $ 9,516.17 |
| DEFICIENCY TOTAL | $159,692.37 |

(Footnote added.) On September 3, 1986, Appellants appealed from the

---

[3]The date 9/1/85 appears to be a typographical error. The date should probably be 9/1/83 when Bell stopped paying on the agreement.

August 4, 1986 judgment (Appeal No. 11626). On December 16, 1986, judgment was entered against FAF and Hill in favor of Appellants for $154,692.37. On January 13, 1987, Appellants filed another notice of appeal from the December 16, 1986 judgment "and all previous proceeding [sic] and orders in this case." On February 12, 1987, the supreme court dismissed Appeal No. 11626 for lack of appellate jurisdiction.

Although we cannot and do not decide any questions raised by those subsequent actions, our opinion in this appeal will affect them.

### III.

The issues raised by Appellants that are deserving of discussion and our answers are as follows:

(1)  Did the trial court have personal jurisdiction over Stromer? Yes.

(2)  Did the trial court err in ruling that Hawaii law rather than California law is applicable to the question whether the Bachrans were entitled to a deficiency judgment? No.

(3)  Did the trial court abuse its discretionary equity power in foreclosing the agreement and ordering that a deficiency judgment would be entered against Appellants? Yes.

Appellants' other points on appeal are without merit.

### IV.

Stromer's argument that the trial court lacked personal jurisdiction over him is utterly without merit. Stromer, an attorney licensed in California, filed a *pro se* answer to the Bachrans' third-party complaint and did not challenge the trial court's *in personam* jurisdiction. Additionally, he participated actively, *pro se*, in the trial. His failure to specifically challenge the trial court's *in personam* jurisdiction over him constitutes a waiver of any objection on those grounds. *Sam Daily Realty, Inc. v. Western Pacific Corp.*, 4 Haw. App. 577, 671 P.2d 450 (1983); Rule 12(h)(1), HRCP (1980).

### V.

On the grounds that all of the parties to the agreement and the assignment are domiciled in California and the documents were exe-

cuted in that state, Appellants contend that the Bachrans should not have been entitled to a deficiency judgment because California's statutes prohibiting deficiency judgments should have been applied by the trial court.[4] We disagree.

Surprisingly, this is a case of first impression in this jurisdiction, in spite of the fact that persons from around the world have been buying and selling large portions of our real estate for no small number of years.

Appellants concede that, as a general rule, matters relating to interests in land depend for their determination on the local law of the *situs* of the land. *In re Grayco Land Escrow, Ltd.,* 57 Haw. 436, 559 P.2d 264, *cert. denied,* 433 U.S. 910, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977). They further acknowledge the general rule that foreclosures are also governed by the local law of the *situs.* Restatement (Second) of Conflict of Laws § 229 (1971) (Restatement).[5] However, citing comment e to § 229 of the

---

[4]Appellants cite §§ 580(b) and 580(d) of the California Code of Civil Procedure, which read as follows:

§ 580b. Purchase money mortgages, etc.; no deficiency judgment

No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property, or under a deed of trust, or mortgage, on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of such dwelling occupied, entirely or in part, by the purchaser.

Where both a chattel mortgage and a deed of trust or mortgage have been given to secure payment of the balance of the combined purchase price of both real and personal property, no deficiency judgment shall lie at any time under any one thereof if no deficiency judgment would lie under the deed of trust or mortgage on real property.

§ 580d. Foreclosure under power of sale; no deficiency judgment; exceptions

No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust.

The provisions of this section shall not apply to any deed of trust, mortgage or other lien given to secure the payment of bonds or other evidences of indebtedness authorized or permitted to be issued by the Commissioner of Corporations, or which is made by a public utility subject to the provisions of the Public Utilities Act.

[5]Section 229 of the Restatement (Second) of Conflicts of Law (1971) (Restatement) reads as follows:

§ 229. Foreclosure of Mortgage on Land

The method for the foreclosure of a mortgage on land and the interests in the land resulting from the foreclosure are determined by the local law of the situs.

Restatement,[6] they argue that the issue of a deficiency judgment does not affect title to the apartment, but arises from the underlying debt contract and is collateral to the foreclosure issue. They contend that the *situs* of the land notwithstanding, California has a more significant relationship with the contractual transaction and the contracting parties in this case than does Hawaii, and the question whether a deficiency judgment is to be awarded in this case should be decided by California's law. The Bachrans argue for the general rule and also that the correct principle for resolving the conflict is expressed in § 189 of the Restatement.[7] But § 189 still raises the question whether California's relationship to the contract is more significant than Hawaii's and whether California's law should apply. In either case, however, we are convinced that Hawaii's relationship with the transaction in question is more significant than California's, and Hawaii's law was correctly applied by the trial court.

Although, as stated, the law of the *situs* applies to matters affecting title to land, R. Leflar, *American Conflicts Law* § 165 (3d ed. 1977), and to foreclosures, some authorities hold that the issue of a deficiency judgment should be decided by applying the law of the jurisdiction governing the underlying debt contract rather than the title, since the deficiency judgment does not affect title to the land. R. Leflar, *supra,* § 171. That is the Restatement's position as expressed in comment e,

---

[6]Comment e to § 229 of the Restatement reads as follows:

e. *Issues collateral to foreclosure.* The courts of the situs would apply their own local law to determine questions involving the foreclosure which affect interests in the land. Issues which do not affect any interest in the land, although they do relate to the foreclosure, are determined, on the other hand, by the law which governs the debt for which the mortgage was given. Examples of such latter issues are the mortgagee's right to hold the mortgagor liable for any deficiency remaining after foreclosure or to bring suit upon the underlying debt without having first proceeded against the mortgaged land. The rules for ascertaining the state whose local law governs the underlying debt are stated in §§ 187-188. For the analogous rule as to chattels, see § 254, Comment e.

[7]Section 189 of the Restatement reads as follows:

§ 189.   Contracts for the Transfer of Interests in Land

The validity of a contract for the transfer of an interest in land and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the land is situated unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*supra.* However, even the Restatement recognizes that the law of the *situs* has the most significant relationship to most land contracts. R. Leflar, *supra,* § 170.

Professor Leflar advocates using certain "choice-influencing considerations" that underlie all such decisions when making a choice of law determination. R. Leflar, *supra,* § 96; *Peters v. Peters,* 63 Haw. 653, 634 P.2d 586 (1981). Professor Leflar's fundamental considerations are: (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law. R. Leflar, § 96; *Peters v. Peters, supra.* The method of assessing the " 'various interests of the states whose laws are in conflict has become the dominant mode of analysis in modern choice of law theory.' " *Peters v. Peters,* 63 Haw. at 663, 634 P.2d at 593 (quoting from Silberman, *Shaffer v. Heitner: The End of an Era,* 53 N.Y.U.L. Rev. 33, 80 n.259 (1978)). Applying Professor Leflar's "choice-influencing considerations" convinces us that Hawaii's law was properly applied in this case.

Admittedly, the domicile of the parties and the *situs* of the contract give California a significant relationship with the contract so that its law could, in accord with conflicts principles, be held applicable to the deficiency judgment issue in this case. California's interest in protecting its citizens against deficiency judgments in cases such as this is of extreme importance to it. Of equal, if not greater, importance in this case, however, are considerations regarding predictability of results in disputes over transactions involving land in this jurisdiction, maintenance of interstate order, and this state's governmental interest in upholding its law relating to real estate transactions. Those considerations militate in favor of applying Hawaii law.

As noted above, real estate in this jurisdiction has been and continues to be attractive to private home buyers and real estate investors throughout the world. Sales and purchases of all types of real property in Hawaii are important to the economic welfare of this state. The predictability of the legal consequences attending such contracts is essential to the maintenance of the level of economic activity necessary to the state's continued prosperity. The governmental interest in advancing that predictability and in maintaining interstate order in such transactions is obvious. If such matters as deficiency judgments arising from land transactions were not to be determined by the laws of this jurisdiction, the laws of nearly every other state as well as a number of

foreign countries relating to that issue might be cited by parties as controlling their rights and liabilities. The application of such a polyglot of laws could lead to the virtual destruction of those important elements of predictability and interstate order, and the weakening of a fundamental part of our economy. Therefore, we reject Appellants' argument that the California law applies and hold that the trial court correctly held that Hawaii law governs the rights of the parties.

However, while correct in its ruling, we hold that the trial court nevertheless abused its discretionary equity powers in foreclosing the agreement and holding that the Bachrans were entitled to a deficiency judgment.

## VI.

"The granting of equitable relief is a matter addressed to the sound discretion of a trial court, and its decision will not be set aside unless manifestly against the clear weight of evidence." *Michely v. Anthony*, 2 Haw. App. 193, 199, 628 P.2d 1031, 1035 (1981). And an equity court has plenary power to fashion its decree in such a manner as to recognize and maintain the equities of the parties. *Schrader v. Benton*, 2 Haw. App. 564, 635 P.2d 562 (1981). We do not think the trial court's decree in this case "conserve[d] the equities of all parties." *Id.* 2 Haw. App. at 566, 635 P.2d at 564.

When the *bona fides* of the Bachrans and Bell are considered only as they relate to the agreement, Bell was in default and could not rescind the agreement and recover her money, *Gomez v. Pagaduan*, 1 Haw. App. 70, 613 P.2d 658 (1980), and the equities appear to weigh against her. Bell's fear that the mortgage foreclosure would render the Bachrans unable to convey good title did not entitle her to cease making payments on the agreement, since it was still possible for the Bachrans to clear the title prior to March 1, 1984. She was, however, entitled to adequate assurance from the Bachrans of their ability to provide good title. *Shaffer v. Earl Thacker Co., Ltd.*, 3 Haw. App. 81, 641 P.2d 983 (1982); *Romig v. deVallance*, 2 Haw. App. 597, 637 P.2d 1147 (1981). Although she did not ask for reassurance, in Bell's favor is the fact that she did attempt to get financing to pay off the agreement, but was unsuccessful because of these proceedings. However, when the facts regarding California Federal's mortgage foreclosure are also considered, the equities

are not so clearly with the Bachrans so as to require Appellants to bear the entire brunt of this debacle. California Federal's foreclosure, which placed the Bachrans' ability to convey good title to the apartment in jeopardy, was caused solely by FAF's and the Bachrans' action. Although William John Bachran testified that he was not aware of the details of the mortgage, the assignment from FAF was made subject to the recorded mortgage, and the Bachrans are charged by law with knowledge of its terms. *In re Nelson,* 26 Haw. 809 (1923). Bell had done nothing to cause California Federal's foreclosure and, indeed, had paid over $100,000 toward the agreement. Moreover, there is no finding that Bell acted in bad faith in her breach of the agreement.

Bell's default would, under ordinary circumstances, have entitled the Bachrans to foreclosure of the agreement. But the circumstances here were not ordinary. The law is clear that the Bachrans' obligation under the agreement was to convey good title on March 1, 1984, not before. *Continental Developers, Ltd. v. Hensel,* 57 Haw. 570, 560 P.2d 1306 (1977); *Romig v. deVallance, supra.* However, they were required in the meantime to protect their ability to tender performance of their part of the bargain. *See Continental Developers, Ltd. v. Hensel, supra.* Instead, they stood by and allowed California Federal's foreclosure to proceed, arguing that since Bell was in default before March 1, 1984, they were not required to tender title and demand payment on that date, and that had Bell paid the balance in full when required they could have used those funds to pay off the mortgage. The argument is without merit.

The Bachrans' covenant to convey good title and Bell's covenant to pay were "mutually dependent and neither party was obligated to perform without due performance by the other, or at least proof of readiness and willingness to perform." *Continental Developers, Ltd. v. Hensel,* 57 Haw. at 573, 560 P.2d at 1308. The Bachrans were not entitled under the circumstances of this case to the expectation of using Bell's money to make their title marketable. *Id.; Shaffer v. Earl Thacker Co., Ltd., supra.*

In fact, both the Bachrans and Bell were in default, since neither was ready and able to perform on March 1, 1984. Their "faults" were approximately equal and the trial court should have attempted to wrought a more just solution, *Paradise Hui Hanalike v. Hawaiian Paradise Park Corp.,* 66 Haw. 362, 662 P.2d 211 (1983), recognizing the equities of the parties as they related to the entire situation involving the apartment. While Bell was not entitled to rescission we do not deem it

just or equitable for the Bachrans to be accorded complete relief where they were not in fact ready and able to perform their part of the bargain. Certainly, the trial court should not have decreed that the Bachrans should recover a deficiency judgment.

## VII.

The agreement in this case gives the seller the following remedies for the buyer's default:

(1) Suit for recovery of the entire unpaid balance;

(2) Cancellation of the agreement, repossession of the property, and retention of all moneys paid by the buyer;

(3) Sale of the property at public auction and recovery of any deficiency between the amount recovered at the sale and the balance owed on the purchase price.

In their cross-complaint the Bachrans sought either alternative (2) or (3), and the trial court awarded them (3). In our view, the court should have cancelled the agreement, authorized the Bachrans to retain all the payments received from Bell, ordered the net proceeds of the foreclosure sale to be paid to the Bachrans, and denied the Bachrans a deficiency judgment against Appellants. This would have recognized that Bell was an innocent victim of the foreclosure, while at the same time recognizing that she had defaulted on the agreement.

On the basis of the foregoing discussion, we vacate the October 22, 1985 decree foreclosing the agreement and remand this matter with instructions to the trial court to enter an amended decree cancelling the agreement of sale, authorizing the Bachrans to retain all the payments received from Bell on the agreement, awarding the net proceeds of the foreclosure sale to the Bachrans, and adjudging that Appellants and the Bachrans shall not be liable to each other for any further monies arising from the agreement or these proceedings, including attorney's fees and costs.

Vacated and remanded for further proceedings in accordance with this opinion.

*Edward C. Kemper* (*Kemper & Watts,* of counsel) for Bell and Stromer.

*Steven Guttman* (*Paul R. Gibson* with him on the brief; *Law Offices of Steven Guttman,* of counsel) for the Bachrans.