971 P.2d 707

**Russ FRANCIS, Plaintiff–Appellant,**

v.

**LEE ENTERPRISES, INCORPORATED dba KGMB; Scott Picken; and Doe· Defendants 1–10; Defendants–Appellees**

No. 21631.

Supreme Court of Hawai'i.

Jan. 21, 1999.

David F. Simons, Matthew J. Viola, and Richard E. Wilson (of Simons & Ichinose), Honolulu, on the briefs, for plaintiff-appellant.

Barry W. Marr, Mark E. Recktenwald, William C.H. Jarrett, and Melanie S. Mito (of Marr Jones & Pepper), Honolulu, on the briefs, for defendant-appellee Lee Enterprises, Incorporated dba KGMB.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by MOON, C.J.

Plaintiff-appellant Russ Francis filed an action in the first circuit court against defendant-appellee Lee Enterprises, Inc., dba KGMB [hereinafter, KGMB], in which he asserted, *inter alia*, a claim for tortious breach of an employment contract. After removing the action to the United States District Court for the District of Hawai'i, KGMB moved to dismiss Francis's tortious breach of contract claim, arguing that Ha-

wai'i law does not recognize tortious breach of contract in the "employment context." Francis countered that Hawai'i law recognizes tortious breach of contract whenever *any* contract is breached in a willful, wanton, or reckless manner.

The federal district court initially granted KGMB's motion to dismiss. Thereafter, Francis filed a motion for reconsideration, or in the alternative, for certification of this question to the Hawai'i Supreme Court. The federal district court concluded that there was no clear, controlling precedent in Hawai'i law and, therefore, certified the following question to this court:

> Does Hawai'i law recognize a tortious breach of contract cause of action in the employment context?

Although, in the past, this court has recognized a cause of action for tortious breach of contract in certain circumstances, we believe that such a rule unnecessarily blurs the distinction between—and undermines the discrete theories of recovery relevant to—tort and contract law. Based on our reexamination of the rule announced in *Dold v. Outrigger Hotel*, 54 Haw. 18, 501 P.2d 368 (1972), we now hold that Hawai'i law will *not* allow tort recovery in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract. Consistent with this rule, emotional distress damages [1] will only be recoverable where the parties specifically provide for them in the contract or where the nature of the contract clearly indicates that such damages were within the contemplation or expectation of the parties. Therefore, in answer to the certified question, Hawai'i law does *not* recognize tortious breach of contract actions in the employment context.

## I. BACKGROUND

The following relevant facts are undisputed. KGMB is the local affiliate of the CBS television network. Francis, a well-known local sports figure, played football for four-

---

1. In addition to seeking emotional distress damages, Francis seeks damages for "extreme anguish, pain, loss of consortium, fear, humiliation, damage to his reputation and career, ... and other general and special damages." Although we focus here on the emotional distress damages, our holding applies with equal force to Francis's request for other traditional tort remedies.

teen years in the National Football League. On January 18, 1996, Francis and KGMB entered into a written employment contract under which Francis worked for KGMB as its sports director until he was terminated on January 20, 1997.

After he was terminated, Francis filed suit in the first circuit court. Francis's complaint contained five claims for relief, including: breach of contract (Count I); tortious breach of contract (Count II); promissory estoppel (Count III); wrongful termination in violation of public policy (Count IV); and punitive damages (Count V). In connection with Count II, the tortious breach of contract claim, Francis alleged that KGMB acted "wilfully, wantonly, recklessly and/or in bad faith" in breaching the written employment contract.

As previously stated, KGMB removed the case to the United States District Court for the District of Hawai'i and, on December 29, 1997, moved to dismiss Count II. Noting that Hawai'i courts had not expressly recognized tortious breach of contract in the employment context, the federal district court, on March 10, 1998, granted KGMB's motion to dismiss Count II of Francis's complaint. On March 20, 1998, Francis filed a motion for reconsideration or, in the alternative, for certification of this question to the Hawai'i Supreme Court. On April 24, 1998, the federal district court withdrew its order dismissing Count II of the complaint and granted Francis's motion for certification pursuant to Hawai'i Rules of Appellate Procedure (HRAP) 13(a).

## II. *STANDARD OF REVIEW*

■ The issue presented by the certified question, i.e., whether Hawai'i recognizes tortious breach of contract in the employment context, is a question of law. "Questions of law are reviewable *de novo* under the right/wrong standard of review." *Best Place, Inc. v. Penn America Ins. Co.,* 82 Hawai'i 120, 123, 920 P.2d 334, 337 (1996) (citation omitted).

## III. *DISCUSSION*

Francis argues that the "well-settled rule that a wanton or reckless breach of contract

is actionable in tort" applies, without exception, to written employment contracts. Francis makes this argument because he seeks traditional tort damages due to KGMB's alleged breach of the employment contract at issue. Although Francis correctly states the rule relating to tortious breach of contract announced in *Dold v. Outrigger Hotel,* 54 Haw. 18, 501 P.2d 368 (1972), we believe, for the reasons discussed *infra,* that the rule was improvidently created, and today we abolish it.

### A. *Stare Decisis*

Before examining the theories of recovery relevant to tort and contract law, we briefly review certain well-established principles governing the deference we generally accord prior decisions of this court. As a general rule,

> we do not lightly disregard precedent; we subscribe to the view that great consideration should always be accorded precedent, especially one of long standing and general acceptance. Yet, it does not necessarily follow that a rule established by precedent is infallible. If unintended injury would result by following the previous decision, corrective action is in order; for we cannot be unmindful of the lessons furnished by our own consciousness, as well as by judicial history, of the liability to error and the advantages of review.

*Espaniola v. Cawdrey Mars Joint Venture,* 68 Haw. 171, 182–83, 707 P.2d 365, 373 (1985). As this court has long recognized, "[w]e not only have the right but are entrusted with a duty to examine the former decisions of this court and[,] when reconciliation is impossible, to discard our former errors." *Koike v. Board of Water Supply,* 44 Haw. 100, 117–18, 352 P.2d 835, 845, *reh'g denied,* 44 Haw. 146, 352 P.2d 835 (1960); *see also Parke v. Parke,* 25 Haw. 397, 401 (1920) ("It is generally better to establish a new rule than to follow a bad precedent.").

### B. *The Dold Rule And Its Progeny*

With these principles in mind, we address the rule announced in *Dold.* In that case, the plaintiffs, tourists from the mainland, ar-

ranged for hotel accommodations at the Outrigger Hotel. Upon arriving at the hotel, the Outrigger refused to accommodate them and instead transferred them to another hotel of lesser quality because the Outrigger lacked available space. Thereafter, the Dolds sued for actual and punitive damages based, *inter alia,* on the Outrigger's alleged breach of contract.

The trial court permitted an instruction on the issue of damages for emotional distress, but refused to allow an instruction on the issue of punitive damages. The jury found in favor of the Dolds and awarded them $600. Although the judgment was favorable to them, the Dolds appealed to this court on the issue of punitive damages. In affirming the judgment and upholding the trial judge's decision to refuse the punitive damages instruction, this court established the rule that, "where a contract is breached in a wanton or reckless manner [so] as to result in a tortious injury, the aggrieved person is entitled to recover in tort. Thus, in addition to damages for out-of-pocket losses, the jury was properly instructed on the issue of damages for emotional distress . . . ." *Dold,* 54 Haw. at 22–23, 501 P.2d at 372.

This court later reaffirmed the *Dold* rule in the commercial contract setting. In *Chung v. Kaonohi Center Co.,* 62 Haw. 594, 618 P.2d 283 (1980), the Chungs were prospective lessees of concession space for a fast-food restaurant. Although the contract to lease the property to the Chungs had been signed, Kaonohi Center continued to negotiate a lease for the same space with three additional parties, giving a right of first refusal to one of these negotiating parties. Although Kaonohi Center was aware of the effort and funds the Chungs had expended in reliance on the lease, it allowed the Chungs to continue to believe that they had secured the lease. Moreover, when a newspaper reported that the space would be leased to another party, Kaonohi Center flatly denied it.

Based on these facts, the trial court gave an instruction that allowed the jury to award "reasonable compensation for emotional distress and disappointment." The jury awarded, among other things, $50,000 in damages

for emotional distress. Kaonohi Center appealed the jury's award, arguing, in part, that this court should limit the *Dold* rule to "personal" contracts, such as contracts of marriage, burial, and delivery of personal messages. However, rather than adopt Kaonohi Center's proposed limitation, this court extended the *Dold* rule to the commercial contract setting, stating: "We do not think that the dispositive factor in allowing damages for emotional distress is the nature of the contract. The dispositive factor is, rather, the wanton or reckless nature of the breach." *Chung,* 62 Haw. at 602, 618 P.2d at 289 [hereinafter, the *Dold–Chung* rule].

### C. *Distinguishing the Dold–Chung Rule From the Tort of Bad Faith*

Preliminarily, we note that our decision today does *not* affect this court's prior decisions recognizing the tort of bad faith in the first-party insurance context. Count II of Francis's complaint alleges that KGMB "acted wilfully, wantonly, recklessly *and/or in bad faith."* (Emphasis added.) However, Francis expressly states in his opening brief that "Count II of the complaint states a claim for tortious breach of contract, *not 'bad faith.'* ... As a result, the issue whether a bad faith cause of action lies for the termination of a written employment contract is *not* before the court." (Emphases added.)

In *Best Place, Inc. v. Penn America Insurance Co.,* 82 Hawai'i 120, 920 P.2d 334 (1996), an insured brought suit against a fire insurer for breach of contract and tortious breach of the implied covenant of good faith and fair dealing after the insurer denied him coverage. The insurer argued that, in the first-party insurance context, Hawai'i does not recognize the tort of bad faith. The primary issue before this court on appeal was thus "whether Hawai'i recognizes the tort of bad faith refusal to pay a valid claim submitted by an insured under a policy of insurance." *Id.* at 122, 920 P.2d at 336. Rejecting the insurer's arguments, we answered the question in the affirmative. *See generally id.* at 127, 920 P.2d at 341.

In so holding, we grounded our decision on the "atypical" relationship existing between

the insured and the insurer. *Id.* at 132, 920 P.2d at 346. Moreover, we recognized that

> the adhesionary aspects of an insurance contract further justify the availability of a tort recovery.... [A] bad faith cause of action in tort will provide the necessary compensation to the insured for all damage suffered as a result of insurer misconduct. Without the threat of a tort action, insurance companies have little incentive to promptly pay proceeds rightfully due to their insureds, as they stand to lose very little by delaying payment.

*Id.* We further explained that an action for the tort of "bad faith" will lie, for example, when an insurance company unreasonably handles or denies payment of a claim.

Other jurisdictions recognizing the tort of bad faith similarly limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion. *See, e.g., Great American Ins. Co. v. General Builders, Inc.,* 113 Nev. 346, 934 P.2d 257, 263 (Nev.1997) (refusing to extend bad faith tort to action by contractor against surety); *Buzzard v. Farmers Ins. Co., Inc.,* 824 P.2d 1105, 1109 (Okla.1991) (explaining tort of bad faith in insurance context and noting prior refusal to extend the tort to commercial loan setting); *ARCO Alaska, Inc. v. Akers,* 753 P.2d 1150, 1153 (Alaska 1988) (holding that punitive damages are not recoverable for breach of implied covenant of good faith and fair dealing in employment context); *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373, 374 (Cal.1988) (holding that there is no cause of action in tort for breach of an implied covenant of good faith and fair dealing in an employment contract); *Wagenseller v. Scottsdale Mem'l Hosp.,* 147 Ariz. 370, 710 P.2d 1025, 1040–41 (Ariz.1985) (expressly refusing to extend the bad faith recovery available in actions on insurance contracts to the employment contract context); *Martin v. Federal Life Ins. Co.,* 109 Ill.

App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998, 1006 (Ill.App.Ct.1982) ("Care must be taken to prevent the transmutation of every breach of contract into an independent tort action through the bootstrapping of the general contract principle of good faith and fair dealing.").[2]

Moreover, in recognizing the tort of bad faith in the first-party insurance context, we were careful to distinguish claims for tortious breach of contract under the *Dold–Chung* rule. As we explained in *Best Place,*

> the tort of bad faith is not a tortious breach of contract, but rather a separate and distinct wrong which results from the breach of a duty imposed as a consequence of the relationship established by contract. Therefore, the tort of bad faith allows an insured to recover even if the insurer performs the express covenant to pay claims. As such, an insurer could be liable for the tort of bad faith for certain conduct where it would not be liable for a tortious breach of contract.

*Id.* at 131, 920 P.2d at 345 (internal quotation marks and citation omitted) (emphasis added). Thus, we agree with Francis that the issue whether a bad faith cause of action lies for the termination of a written employment contract is *not* before the court.

Finally, we note that, although most of the courts that recognize the "tort of bad faith" do not expressly distinguish between such actions and actions for "tortious breach of contract," they nonetheless explain that traditional tort damages are not available outside the bad faith tort context, absent conduct that independently establishes a tort. *See, e.g., Story v. City of Bozeman,* 242 Mont. 436, 791 P.2d 767, 775–76 (Mont.1990) (Limiting the tort of bad faith to exceptional circumstances, the court noted that tort-type damages are only available in tort actions, such as fraud, fraudulent inducement, and tortious interference with contract.); *ARCO Alaska, Inc.,* 753 P.2d at 1153 (refusing to

---

**2.** Although we do not address the question here, the reasoning of the cases cited *supra* and our own decision in *Best Place* suggests that, even if Francis attempted to state a claim for bad faith breach of his employment contract, it is not likely that he could do so. *See Best Place,* 82

Hawai'i at 132, 920 P.2d at 346 ("[T]he policy considerations surrounding the adoption of the tort of bad faith in the insurance context are atypical and will not necessarily extend to all types of contracts.").

allow punitive damages "unless the conduct constituting the breach is also a tort for which punitive damages are recoverable"); *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 374 (Wis.1978) (Noting that it is "confusing and inappropriate" to use the terms "tortious breach of contract" to describe the "tort of bad faith," the court explained that punitive damages are recoverable for the "tort of bad faith" because that action sounds in tort, not contract.).

Thus, although not expressly addressing claims for "tortious breach of contract," the manner in which the foregoing courts have distinguished the "tort of bad faith" from other claims arising out of a contractual relation strongly suggests that they would *not* allow tort-type damages for a wilful, wanton, or reckless breach of contract. *See, e.g., Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 590 N.E.2d 1228, 1232 (Ohio 1992) (recognizing tort of bad faith in insurance context, the court stated that "[t]he tort of bad faith is *not* a tortious breach of contract, for no matter how willful or malicious the breach, it is no tort to breach a contract" (emphasis added)), *overruled on other grounds, Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (Ohio 1994). Consequently, the *Dold–Chung* rule represents an aberration in the fabric of American law. The rule has not gathered support in other jurisdictions in the years since *Dold* and *Chung* were decided, and it would represent an even greater departure from generally accepted law were we to extend it to the employment context. *See Gaglidari v. Denny's Restaurants, Inc.*, 117 Wash.2d 426, 815 P.2d 1362, 1370 (Wash.1991) ("Our research indicates [that,] ... [s]ince the adoption of Restatement (Second) of Contracts in 1981, all states considering the question, except Colorado, have adhered to the long-standing rule which denies emotional distress damages in breach of employment contract cases.").

### D. *Justification For Abolishing the Dold–Chung Rule*

Francis correctly argues that, if *Dold* and *Chung* apply, a wilful, wanton, or reckless breach of *any* contract—including an employment contract—would support the award of traditional tort damages. However, for the reasons stated *infra*, we decline to recognize the rule any longer, much less to apply it to employment contracts. We do not reach this result lightly; however, we believe that: (1) the *Dold–Chung* rule does not accord with certain basic principles relevant to contract law; and (2) "unintended injury would result," *Espaniola*, 68 Haw. at 182, 707 P.2d at 373, were we to prolong the life of the *Dold–Chung* rule and apply it to the employment context.

### 1. The Dold–Chung Rule Does Not Accord With Basic Principles of Contract Law.

As previously stated, the *Dold–Chung* rule unnecessarily blurs the distinction between—and undermines the discrete theories of recovery relevant to—tort and contract law. The *Dold* and *Chung* courts based their holdings on the bare observation that "certain situations are so disposed as to present a fusion of the doctrines of tort and contract." *Dold*, 54 Haw. at 22, 501 P.2d at 372 (citation omitted); *Chung*, 62 Haw. at 602, 618 P.2d at 289. Both courts, however, failed adequately to consider the differing policy considerations and distinct theories of recovery relevant to tort and contract law.

■ The distinction between tort and contract law is well established in common law, and distinct objectives underlie the remedies created in each area. "In construing a contract, a court's principal objective is *to ascertain and effectuate the intention of the parties[,]*" *Brown v. KFC Nat'l Management Co.*, 82 Hawai'i 226, 240, 921 P.2d 146, 160, *reconsideration denied*, 82 Hawai'i 360, 922 P.2d 973 (1996) (emphasis added) (brackets omitted), whereas, tort law is primarily designed *to vindicate social policy*. *See* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 1, at 5–6 (5th ed.1984).

■ Given these distinct purposes, courts have historically awarded different types of damages in tort and in contract. As Justice Mosk of the California Supreme Court recently stated, "[c]ontract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by

them at that time; consequential damages beyond the expectations of the parties are not recoverable." *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 44 Cal.Rptr.2d 420, 900 P.2d 669, 682 (Cal.1995) (citation omitted) (Mosk., J., concurring and dissenting) (the majority overruled previous case law recognizing tort of bad faith denial of contract, explaining that tort damages are inappropriate in breach of contract actions); *see Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 120 n. 11, 839 P.2d 10, 29 n. 11 (reaffirming "the rule that approves the awarding of contract damages that are *foreseeable* i.e., 'such as may reasonably be supposed to have been in the contemplation of the parties at the time the contract was entered into'" (citations omitted) (emphasis in original)), *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992); *see also Silva v. Albuquerque Assembly & Distribution Freeport Warehouse Corp.*, 106 N.M. 19, 738 P.2d 513, 514 (N.M.1987) (no recovery for emotional distress in breach of employment contract action absent showing that such damages were within contemplation of parties when they entered the contract). Thus, damages for emotional distress and mental suffering, as well as punitive damages, are generally *not* recoverable in contract. *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 28 Cal.Rptr.2d 475, 869 P.2d 454, 464 (Cal.1994) (holding that a contracting party may not be held liable in tort for conspiring with another to interfere with his own contract).

■ Consistent with this opinion, however, courts may still award damages for emotional distress arising out of a breach of contract in two exceptional situations. In the first situation, the emotional distress will usually accompany a bodily injury. "In such cases[,] the action may nearly always be regarded as one in tort, although most jurisdictions do not require the plaintiff to specify the nature of the wrong on which his action is based[.]" Restatement (Second) of Contracts § 353 comment a (1979). Actions that fall into this category include medical malpractice cases growing out of relationships and duties that originate in contract. *See, e.g., Leong v. Kaiser Foundation Hospitals*, 71 Haw. 240, 788 P.2d 164 (1990) (Although not addressing the issue of damages, the court recognized the plaintiffs' medical malpractice action, stating that "it is only under the contract that the [plaintiffs] were entitled to and received the medical services from [defendant-hospital.]"). The rule we announce today would similarly not affect recovery under circumstances where emotional distress accompanies bodily injury and the action may be regarded as one in tort.

In the second situation where courts allow damages for emotional distress, the contract is of such a kind that serious emotional disturbance is a particularly foreseeable result of a breach occurs. *See, e.g., Brown v. Bannister*, 14 Haw. 34, 36–37 (1902) (noting that, in estimating the amount of the verdict in an action for breach of a promise to marry, it was proper for the jury to consider "the humiliation and the physical pain suffered by [the plaintiff] in consequence of the seduction" and "the conduct of the parties toward each other"); *Wilson v. Houston Funeral Home*, 42 Cal.App.4th 1124, 50 Cal.Rptr.2d 169, 173 (Cal.Ct.App.1996) ("A contract whereby a mortician agrees to prepare a body for burial is one in which it is reasonably foreseeable that breach may cause mental anguish to the decedent's bereaved relatives." (Citation and internal quotation marks omitted.)).

Nothing in this opinion should be construed as necessarily precluding plaintiffs in contract actions from recovering damages for emotional distress. Rather, in deciding whether such damages are recoverable, we shift the focus of the inquiry away from the *manner* of the breach and to the *nature* of the contract. Thus, damages for emotional distress may be recoverable, but only where the parties specifically provide for them in the contract or where the *nature* of the contract clearly indicates that such damages are within the contemplation or expectation of the parties. Unlike the *Dold–Chung* rule, the rule we announce today accords with compensatory objectives relevant to contract law and eschews the imposition of damages for emotional distress to vindicate "social policy" in the setting of private contracts.

In addition to compensating parties in accordance with their expectations, contract law serves other broader functions as well—for example, predictability in contractual relations. "[P]redictability about the cost of contractual relationships plays an important role in our commercial system." *Foley*, 254 Cal.Rptr. 211, 765 P.2d at 389 (citation omitted). Predictability in contractual relations enables parties to estimate the financial risks and rewards of doing business and thereby encourages commercial activity. *See California Federal Sav. and Loan Ass'n v. Bell*, 6 Haw.App. 597, 606, 735 P.2d 499, 506 (1987) (noting that, in real estate context, "predictability of the legal consequences attending . . . contracts is essential to the maintenance of the level of economic activity necessary to the state's continued prosperity").

Other jurisdictions likewise recognize that, "[i]f tort and contract remedies were allowed to overlap, certainty and predictability in allocating risk would decrease and impede future business activity." *Berschauer/Phillips Const. Co. v. Seattle School Dist. No. 1*, 124 Wash.2d 816, 881 P.2d 986, 992 (Wash.1994); *see also Freeman*, 44 Cal.Rptr.2d 420, 900 P.2d at 674 (limiting contract breach damages to those that are reasonably foreseeable by the parties "serves to encourage contractual relations and commercial activity").

■■■ Our concerns about the need for predictability in contractual relations and the compensatory objectives of breach-of-contract law apply with special force in the employment context. Parties to an employment contract primarily exchange services for salary and benefits. Although people may attach great personal and emotional significance to their employment, employment contracts principally serve an economic purpose. As the Michigan Supreme Court has noted:

> An employment contract will indeed often have a personal element. Employment is an important aspect of most persons' lives, and the breach of an employment contract may result in emotional distress. The primary purpose in forming such contracts, however, is economic and not to secure the protection of personal interests. The psy-

chic satisfaction of the employment is secondary.

*Valentine v. General American Credit, Inc.*, 420 Mich. 256, 362 N.W.2d 628, 631 (Mich. 1985) (holding that employee could not recover damages for mental distress for breach of employment contract). Thus, contracts for employment differ materially from the contracts for marriage and burial services discussed *supra*, where courts have historically deemed damages for emotional distress to be within the contemplation or expectation of the parties.

With respect to punitive damages, we agree with those courts that have refused to allow such damages in contract actions "unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." *ARCO Alaska, Inc.*, 753 P.2d at 1153. Traditionally, damages for breach of contract have been awarded "to compensate the aggrieved party rather than to punish the breaching party." *Foley*, 254 Cal. Rptr. 211, 765 P.2d at 389; *see also Hi Kai Inv., Ltd. v. Aloha Futons Beds & Waterbeds, Inc.*, 84 Hawai'i 75, 80–81, 929 P.2d 88, 93–94 (1996) ("[A] basic precept of contract law is that a party who sustains a loss by the breach of another is entitled to compensation that will 'actually or as precisely as possible compensate the injured party.'" (Citation omitted.)); Restatement (Second) of Contracts § 355 comment a (1979) ("The purposes of awarding contract damages is to compensate the injured party[ ] . . . [and not] to punish the party in breach or to serve as an example to others unless the conduct constituting the breach is also a tort[.]").

Indeed, this rule is so well established with respect to punitive damages that courts have refused to award punitive damages, even where the parties have attempted to provide for them within a contract. *See Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawai'i Ltd.*, 76 Hawai'i 277, 296, 875 P.2d 894, 913 (1994) (stating that "courts are 'disinclined' to enforce penalty provisions in contacts"); *Cooper v. Smith*, 70 Haw. 449, 453, 776 P.2d 1178, 1181 ("courts regard penalty and forfeiture provisions in contracts with disfavor"), *reconsideration denied*, 70 Haw. 662, 796 P.2d 1005 (1989); *see also* 5 A. Corbin, *Cor-*

bin on Contracts § 1057, at 334 (1964) (noting that liquidated damages functioning as a penalty for breach are impermissible in contract law); *cf. L.L. Cole & Son, Inc. v. Hickman,* 282 Ark. 6, 665 S.W.2d 278, 281 (Ark.1984) (holding "that in actions where on the facts either an action in contract or one in tort is possible, the plaintiff must specifically plead and prove his cause of action in tort to be awarded punitive damages"). Moreover, this court is not aware of any Hawai'i decision, outside of the insurance context,[3] where a court has allowed or upheld the award of punitive damages for breach of a purely contractual obligation.

We note that, even where this court has recognized that punitive damages are *theoretically* recoverable for breach of contract, we either held that the *Dold–Chung* rule did not apply under the circumstances, *see Best Place,* 82 Hawai'i at 131, 920 P.2d at 345 (acknowledging the *Dold* principle, but noting that the matter before this court involved "a separate and distinct wrong" comprising the "tort of bad faith"), or determined that the circumstances did not warrant punitive damages, *see Ross,* 76 Hawai'i at 466, 879 P.2d at 1049 (assuming *arguendo* that plaintiff asserted claim for tortious breach of contract, the court held that punitive damages were not justified under the circumstances); *see also Amfac, Inc.,* 74 Haw. at 138–39, 839 P.2d at 37 (holding that counterclaim plaintiff, in action for breach of indemnification agreement, was not entitled to punitive damages).

Based on our analysis above, two conclusions follow. First, damages for emotional distress will *rarely,* if ever, be recoverable for breaches of an employment contract, where the parties did not bargain for such damages or where the nature of the contract does not clearly indicate that such damages were within the contemplation or expectation of the parties. Second, punitive damages will *never* be recoverable, absent conduct that violates a duty that is independently recognized by principles of tort law. Of course,

the existence of a contract will not defeat otherwise valid claims for relief sounding in tort, such as fraud, where punitive damages are allowed in order to vindicate social policy.

### 2. Unintended Injury Would Result if We Continued to Adhere to the *Dold-Chung* Rule and Applied it to the Employment Context.

KGMB argues that allowing tort damages for tortious breach of contract in the employment context would drain judicial resources as courts inquire into the breaching party's good or bad faith. In support of its argument, KGMB relies upon *Parnar v. Americana Hotels, Inc.,* 65 Haw. 370, 652 P.2d 625 (1982), which declined to impose a duty of good faith on parties to an at-will employment contract. KGMB reasons that this court's refusal to impose an obligation of good faith in *Parnar* precludes recognition of actions for tortious breach of contract here because such an action necessarily involves inquiry into a party's good or bad faith.

In response, Francis argues that "recognizing tortious breach of contract in the employment context would not open the floodgates and 'subject each discharge to [after-the-fact] judicial incursions into the amorphous concept of bad faith.'" Additionally, Francis contends that KGMB's reliance upon *Parnar* is misplaced because *Parnar* does not apply beyond the at-will employment context, *see Best Place,* 82 Hawai'i at 124 n. 5, 920 P.2d at 338 n. 5 ("[o]ur holding in *Parnar* . . . is limited to the at-will employment context"), and, moreover, because the present case does *not* turn on any implied duty of good faith.

As previously noted, Francis expressly stated that he is not pursuing a claim for the tort of bad faith. We therefore reject KGMB's contention to the contrary. Francis's use of the term "bad faith" in Count II of his complaint does not negate his additional allegation that KGMB acted wilfully, wantonly, and recklessly in terminating him.

Although Francis is correct that *Parnar* is inapposite and that this court need not in-

---

**3.** As explained *supra,* our decision today in no way affects our prior decisions, such as *Best Place,* recognizing the tort of bad faith within the insurance context. Although we did not have occasion to uphold or deny an award of punitive damages in *Best Place,* the fact that an insured might conceivably recover punitive damages, where an insurer commits the tort of bad faith, does not imply that such damages are recoverable for breach of an employment contract.

quire into the "amorphous concept of bad faith," we believe that we would create other, larger, problems by applying the moribund *Dold–Chung* rule to the employment context. As explained *infra*, we believe that recognizing tortious breach of contract in the employment context *would* require judges and juries to make impossible distinctions between "intentional" breaches that justify the award of compensatory damages and "wilful, wanton, or reckless" breaches that justify the award of tort damages.

Presently, contract law allows—and at times even encourages—intentional breaches of contract. *See* R. Posner, *Economic Analysis of Law* § 3.8 (1972) (explaining fundamental principles of contract damages). Whereas society views intentional torts as reprehensible, many people have argued that intentional breaches of contract are morally neutral. Proponents of this amoral view forcefully argue that "efficient" breaches of contract, *i.e.*, breaches where the gain to the breaching party exceeds the loss to the party suffering breach, actually result in a net benefit to society because such breaches allow resources to move to their more optimal use. *See id.* at 55–57; *see also Hickman*, 665 S.W.2d at 280 ("The law has long recognized the view that a contracting party has the option to breach a contract and pay damages if it is more efficient to do so.") Even Justice Holmes recognized, over 100 years ago, that breaching a contract constitutes a morally neutral act, stating that "[t]he duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it—*and nothing else.*" O. Holmes, *The Path of the Law*, 10 Harv. L.Rev. 457, 462 (1897) (emphasis added).

Based on these policy considerations and the compensatory objectives of contract law, many courts—including the courts of this jurisdiction—focus on the loss to the non-breaching party rather than whether the breach was intentional. *See Amfac, Inc.*, 74 Haw. at 128, 839 P.2d at 32 ("It is now a well established principle in the law of damages that, when one sustains a loss by breach of a contract, he is entitled to have just compensation commensurate with his loss and that damages awarded should be in such amount as will actually or as precisely as possible compensate the injured party." (Citation and internal quotation marks omitted.)). There is simply no principled way to distinguish "intentional" breaches from "wilful" or "wanton" breaches, which, Francis argues, should support the award of tort damages.

Francis impliedly concedes the difficulty of making such distinctions. In his opening brief, Francis argues that "[t]he employer's conduct with respect to termination will be measured against the applicable provisions of the employment contract." Francis then argues, in his reply brief, that, "[i]n the case of a tortious breach of contract claim, ... the manner of termination (constituting breach of the employment contract) is gauged against the objective wanton and reckless standard." (Emphasis in original.) Francis appears to offer conflicting bases—one in contract, the other in tort—for measuring an employer's conduct in terminating an employee. This conflict highlights the difficulty of applying tort remedies, which are justified by a tortfeasor's unreasonable behavior, to the contract paradigm with its differing objectives.

Moreover, Francis does not offer a principled way for courts to distinguish non-tortious, though intentional, breaches of contract from "wilful" or "wanton" breaches that justify the award of tort damages. The attempt to draw such a line would necessarily drain judicial resources as litigants invite courts to make such distinctions in *every* action for breach of an employment contract. *See Foley*, 254 Cal.Rptr. 211, 765 P.2d at 399 (stating that "it would be difficult if not impossible to formulate a rule that would assure that only 'deserving' cases give rise to tort relief").

█ We also recognize that, if we were to apply the "tortious breach of contract" construct to the employment context, we would create mischief in other ways as well. For example, in suits for violation of contracts between an employer and a labor organization, section 301 of the federal Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), preempts local law. *See Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (Interpreting section 301, the Court ruled that section 301 expresses a federal policy that the substantive law applicable in section 301 cases "is federal law,

**244**

which the courts must fashion from the policy of our national labor laws."); *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 210, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (Acknowledging that some tort actions must be preempted under section 301, the Court stated that, "[i]f the policies that animate [section] 301 are to be given their proper range, ... the pre-emptive effect of [section] 301 must extend beyond suits alleging contract violations."). Courts should avoid creating causes of action that unnecessarily blur the distinction between tort and contract because, in addition to the concerns we have already noted, such blurring often requires future courts to sort out problems they otherwise might not face. In the present case, one future problem might involve preemption under federal labor laws such as Section 301. As the Michigan Supreme Court has noted, the "development of the scope of preemption under [section] 301 has been driven, in part, by an effort *to make certain that "'parties [are not allowed] to evade the requirements of [section] 301 by relabeling their contract claims as claims for tortious breach of contract.'"" Betty v. Brooks & Perkins,* 446 Mich. 270, 521 N.W.2d 518, 522–23 (Mich. 1994) (brackets in original) (emphasis added) (citing *United Steelworkers of America v. Rawson,* 495 U.S. 362, 369, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990)). By declining to apply the *Dold–Chung* rule (which we abolish in any event) to the employment context, we will not be called upon in the future to discriminate between those actions where a contract claim is relabelled merely to evade section 301's requirements and those actions where the employer tortiously injures its employee and state law actions remain available. *See, e.g., Gonzalez v. Prestress Eng'g Corp.,* 115 Ill.2d 1, 104 Ill.Dec. 751, 503 N.E.2d 308, 313–14 (Ill.1986) (holding that retaliatory discharge claim conferring upon all employees certain non-negotiable rights was not preempted by Labor Management Relations Act), *cert. denied,* 483 U.S. 1032, 107 S.Ct. 3248, 97 L.Ed.2d 779 (1987).

 Accordingly, "unintended injury would result by following the [*Dold* and *Chung* ] decision[s], [and] corrective action is in order." *Espaniola,* 68 Haw. at 182, 707 P.2d at 373. We therefore abolish the *Dold–Chung* rule and hold that Hawai'i law will *not*

allow a recovery in tort, including a recovery of punitive damages, in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract. Consistent with this rule, damages for emotional distress will only be recoverable where the parties specifically provide for them in the contract or where the nature of the contract clearly indicates that such damages are within the parties' contemplation or expectation in the event of a breach.

 Therefore, bare allegations that a defendant employer's wilful, wanton, or reckless discharge of an employee caused an injury, do *not,* standing alone, justify the recovery of tort damages in the employment contract context.

## IV. *CONCLUSION*

For the foregoing reasons, we answer the certified question in the negative, hold that Hawai'i law does *not* recognize tortious breach of contract actions in the employment context, and return this case for further proceedings in the United States District Court for the District of Hawai'i.