**Hideo MATSUDA, Plaintiff,**

v.

**Michiko WADA, Defendant.**

**No. Civ. 98–00756 ACK.**

United States District Court, D. Hawaii.

Aug. 4, 1999.

Nenad Krek, Carlsmith Ball Wichman Case & Ichiki, Honolulu, HI, for Hideo Matsuda, plaintiff.

Eric J. Piesner, Chun Chipchase Takayama Tamashiro, Honolulu, HI, Carl H. Osaki, Honolulu, HI, for Michiko Wada, defendant.

Eric J. Piesner, Chun Chipchase Takayama Tamashiro, Honolulu, HI, Carl H. Osaki, Honolulu, HI, for Michiko Wada, counter-claimant.

Nenad Krek, Carlsmith Ball Wichman Case & Ichiki, Honolulu, HI, for Hideo Matsuda, counter-defendant.

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KAY, District Judge.

### BACKGROUND

This case arises in the wake of the victory of the racing yacht Big Apple III in her class in the 1998 Kenwood Cup. Plaintiff is the owner of the yacht. Defendant alleges that she performed services which contributed to the success of the Big Apple III "campaign" pursuant to a contract with Plaintiff. Specifically, Defendant alleges that she is owed money for overseeing the

design, construction, launching, optimization, and participation in three regattas of the Big Apple III. However, the terms of that contract, the specific nature and extent of services provided by Defendant, and the amount of compensation, if any, that may still be due to Defendant, are all disputed.

It is undisputed that Defendant, who assisted Plaintiff with the arrangements for transportation of the Big Apple III to Japan, was in possession of the original Bill of Lading for the yacht after the dispute regarding her alleged compensation arose. She then refused to release the Bill of Lading unless Plaintiff paid in full her claim for the compensation allegedly due to her for the services performed. Because of Defendant's refusal to surrender the Bill of Lading, Plaintiff had to post a bond in the amount of the value of the yacht in order to receive delivery of the yacht from the ocean carrier, and then sought to recover the Bill of Lading through this action. Plaintiff's claims for damages include, inter alia, costs associated with securing the bond, storage costs incurred due to the delay in retrieving the yacht, and legal fees. After Plaintiff filed the Complaint, Defendant filed a Counterclaim, alleging that she is entitled to damages for breach of contract, unjust enrichment, and punitive damages.

On June 2, 1999, Plaintiff filed the instant Motion for Partial Summary Judgment, claiming that the undisputed facts establish Defendant's liability for conversion of the Bill of Lading, fraud, and punitive damages (Counts II, VI, and VII of the Complaint). Plaintiff also asks the Court to rule that Defendant has failed to state a claim for punitive damages under Hawaii law, because her punitive damages claim is predicated solely upon claims arising out of a contract. On July 15, 1999, Defendant filed her opposition to Plaintiff's motion. On July 22, 1999, Plaintiff filed his reply. The Court heard oral argument on August 2, 1999.

## STANDARD OF REVIEW

### I. *Motion for Summary Judgment*

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See T.W. Elec. Serv.*, 809 F.2d at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815

F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis in original) (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.,* 809 F.2d at 630–31.

## DISCUSSION

### I. *Applicable Law*

#### A. *Admiralty Versus Diversity Jurisdiction*

■ The first issue the Court must address is which law applies to the instant dispute. In order to settle this issue, the Court must first determine whether it sits in diversity or in admiralty. As the Ninth Circuit recently stated:

In order to settle any choice of law issue, we must first determine whether this court's jurisdiction over the subject matter of this action, and that of the district court, derives from the diversity of citizenship of the parties, or from the maritime nature of the contract sued on. This is so because a federal court sitting in diversity applies the choice-of-law rules of the forum state, whereas a federal court sitting in admiralty must apply federal maritime choice-of-law rules.

*Aqua–Marine Constructors, Inc. v. Banks,* 110 F.3d 663, 670 (9th Cir.1997), *cert. denied,* 522 U.S. 933, 118 S.Ct. 339, 139 L.Ed.2d 263 (1997). Plaintiff's Complaint alleges both admiralty and diversity jurisdiction.

Specifically, Plaintiff's Complaint sets forth claims for Petitory and/or Possessory Relief (Count I), Conversion (Count II), Replevin (Count III), Declaratory Relief (Count IV), Injunctive Relief (Count V), Fraud (Count VI), and Punitive Damages (Count VII). Only Plaintiff's claims for conversion, fraud, and punitive damages are at issue in the instant motion. Therefore, the Court must determine whether state law or maritime law applies to those three claims.

To determine whether Plaintiff has alleged a tort within the Court's admiralty jurisdiction, the Court must apply a specific test. The United States Supreme Court has held:

[A] party seeking to invoke federal admiralty jurisdiction … over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Company,* 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). Likewise, the Ninth Circuit has held:

> [T]he test for admiralty jurisdiction requires both that the injury occur on navigable waters and that the activity have some connection to maritime commerce.... We have recognized that admiralty jurisdiction is lacking where the tort occurs ... solely on land.

*J. Lauritzen A/S v. Dashwood Shipping, Ltd.,* 65 F.3d 139, 142 (9th Cir.1995).

In his Complaint, Plaintiff alleges that the Bill of Lading was converted. There is no allegation that any injury to Plaintiff occurred on navigable waters. The harm alleged by Plaintiff includes: (1) storage/demurrage costs; (2) cost of the bank guarantee furnished to obtain delivery of the yacht; and (3) various legal costs. None of these costs are alleged to have occurred upon navigable waters. Likewise, the alleged fraud by Defendant was committed on land. Moreover, both parties appear to concede that the claims at issue in the instant motion are not governed by admiralty law.[1] Based on the foregoing, the Court finds that it has jurisdiction over the claims at issue in the instant motion not under its admiralty jurisdiction, but instead under its diversity jurisdiction. Accordingly, the Court finds that the determination of whether Hawaii law or Japanese law applies in this case is governed by Hawaii's choice-of-law rules, as discussed below.

1. Specifically, Plaintiff's analysis of the merits of his motion is based on applicable Hawaii law, Defendant's opposition asserts that the claims at issue are non-maritime claims, and Plaintiff's reply brief again analyzes applicable Hawaii law.

2. Defendant argues that the focus is on other factors which were discussed by the Hawaii Intermediate Court of Appeals in *California Federal Savings and Loan Assoc. v. Bell,* 6 Haw.App. 597, 606, 735 P.2d 499 (1987). In

## B. *Choice of Law*

In diversity cases, the law of the forum state is applied in choice-of-law analyses. *See Van Dusen v. Barrack,* 376 U.S. 612, 628, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Because Hawaii is the forum state, the Court must analyze which law applies under Hawaii's choice-of-law rules.

The Hawaii Supreme Court recently addressed this issue and held that, in making such a determination, the Court is to look "to the state with the most significant relationship to the parties and subject matter." *Roxas v. Marcos,* 89 Hawai'i 91, 117 n. 16, 969 P.2d 1209 (1998). In *Roxas,* the Hawaii Supreme Court specifically considered the following factors in making this determination: (1) where the relevant events occurred; (2) the residence of the parties; and (3) whether any of the parties had any particular ties to one jurisdiction or the other. *See id.* This Court recently addressed this same issue, and likewise found that "Hawaii resolves its conflict of laws issues by deciding which State has the strongest interest in seeing its law applied to a particular case." *UARCO v. Lam,* 18 F.Supp.2d 1116, 1123 (D.Haw. 1998).[2] Moreover, "[t]here is a presumption that Hawaii law applies unless another state's law 'would best serve the interests of the states and persons involved.'" *Id.*

Several factors weigh in favor of Hawaii law governing the instant dispute. First, the Court begins with the presumption that Hawaii law applies to the claims at issue. *See id.* Second, Defendant met with Plaintiff in Hawaii regarding the Bill of Lading, and also presented an invoice of $83,954 for work she had done, which

*Bell,* the court specifically mentioned the following factors: "(1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Id.* However, the Hawaii Supreme Court, since *Bell,* has continued to adhere to the "most significant relationship" test. *See Roxas,* 89 Hawai'i at 117, 969 P.2d 1209; *Lewis v. Lewis,* 69 Haw. 497, 499, 748 P.2d 1362 (1988).

Plaintiff disputed via a fax to Defendant that same day. *See* Counterclaim at 3–4. Third, the alleged conversion took place in Hawaii, since Defendant was in Hawaii at the time she decided to withhold the Bill of Lading from Plaintiff, and instead, send it to her attorney in Japan to ensure payment of the disputed compensation she felt was owed to her. *See* Wada Decl. at 3. Fourth, Defendant was in Hawaii when Plaintiff's lawyer wrote to her and requested she surrender the Bill of Lading to Plaintiff. Fifth, Defendant is a permanent resident of Hawaii. Finally, the agreement between the parties that Defendant would handle the shipping arrangements for the Big Apple III to Japan originated in Hawaii, and the yacht was in Hawaii at that time. Thus, Hawaii has a significant interest in seeing its laws applied here.

There are also a number of factors which weigh in favor of Japanese law governing this case. First, the injuries to Plaintiff occurred in Japan, since he was required to post the bond there and incurred additional storage charges, the cost of the bank guarantee, and legal fees there. Second, the injured party in the Complaint, namely Plaintiff, is both a citizen and a resident of Japan. Third, Defendant is a citizen of Japan. Fourth, the subject matter of the Bill of Lading, the Big Apple III, is the property of a Japanese citizen and is registered in Japan. Fifth, Defendant's counsel, Kazuhiko Kokusho, a citizen and resident of Japan, was in Japan when he refused to surrender the Bill of Lading following Plaintiff's demand that it be returned. Sixth, Plaintiff was in Japan when he made any and all demands for the return of the Bill of Lading.

Upon consideration of all of the foregoing factors, the Court finds that Hawaii has the most significant interest in the parties and in the subject matter of this dispute. This is primarily due to the initial presumption that Hawaii law governs, as well as the fact that the alleged conversion took place in Hawaii. Accordingly, the Court finds that Hawaii law applies.

## II. *Plaintiff's Motion for Summary Judgment*

Plaintiff claims that he is entitled to summary judgment on his conversion, fraud, and punitive damages claims. The Court addresses each of these claims in turn.

### A. *Conversion*

The law of conversion is well settled, although case law in Hawaii is scarce. The Supreme Court defined this tort many years ago:

> Any distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, is a conversion. While therefore it is a conversion where one takes the plaintiff's property and sells or otherwise disposes of it, it is equally a conversion if he takes it for a temporary purpose only, if in disregard of the plaintiff's right.... The word "conversion" by a long course of practice has acquired a technical meaning. It means detaining goods so as to deprive the person entitled to the possession of his dominion over them.... Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein ... Conversion may be proved by demand and refusal of possession but evidence of this is not necessary if there is other evidence of actual conversion.

*Tsuru v. Bayer*, 25 Haw. 693, 1920 WL 830, \*2 (1920) (internal citations and quotation marks omitted). In short, the substance of the tort is wrongful dominion over the property of another. Other jurisdictions are in accord. *See American Bankers Mortgage Corp. v. Federal Home Loan Mortgage Corp.*, 75 F.3d 1401, 1411 (9th Cir.1996), *cert. denied*, 519 U.S. 812, 117 S.Ct. 58, 136 L.Ed.2d 21 (1996) ("The elements of a conversion cause of action (in California) are (1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition

of plaintiffs' property rights; and (3) damages.").

Turning to the facts of this case, the Court finds that Plaintiff has established that he is entitled to summary judgment on his conversion claim. First, it is undisputed that Plaintiff is the sole lawful owner of the Big Apple III. *See* Def.'s Sep. Concise Statement of Facts at 2. Consequently, Plaintiff alone had the right to possession of the Bill of Lading. Second, Defendant instructed European Ocean Freight, Inc. ("EOF") to send the Bill of Lading to her. *See id.* Third, a series of events lead to the inevitable conclusion that a conversion occurred here: (1) on August 24, 1998, Defendant met with Plaintiff to discuss the handling of the Bill of Lading, and at this meeting she presented an invoice for payment of services in the amount of $83,954, to which Plaintiff allegedly responded that he thought Defendant had been working for free and that they would resolve the issue at a later time; (2) on August 27, 1998, Defendant obtained the Bill of Lading and called Plaintiff in Tokyo for instructions regarding the broker to whom she was to send the Bill of Lading; (3) on August 28, 1998, Defendant prepared a letter to Plaintiff demanding payment of her invoice by September 3, 1998, and faxed the letter to him on August 31, 1998 (Japan time); (4) on September 3, 1998, Defendant retained a Japanese attorney to represent her "with respect to my rights for compensation and as to the B/L. Relying upon his advice and explanation of Japanese law, and pursuant to his instruction, I sent the B/L to him at his Tokyo office." Wada Decl. at 3; (5) on or about September 8, 1998, Defendant received a letter from Plaintiff's attorney, asking her to surrender the Bill of Lading to Plaintiff. *See* Def.'s Sep. Concise Statement of Facts at 3; (6) on September 11, 1998, Defendant's attorney responded to Plaintiff's attorney and refused to surrender the Bill of Lading, stating that it would not be returned until Plaintiff paid Defendant the $83,954. Defendant and her attorney did these things knowing that the principal purpose of the Bill of Lading

was to obtain possession of the Big Apple III from the carrier at the point of delivery, and further knowing that Plaintiff wished to take delivery of his yacht. *See id.;* and (7) Plaintiff never authorized Defendant to withhold the Bill of Lading for any purpose. *See id.* Finally, Plaintiff has established, through unrebutted evidence, that he was damaged as a result of Defendant's withholding the Bill of Lading.

It is clear from the foregoing facts that Defendant converted the Bill of Lading to her own use by sending it to her Japanese attorney to ensure payment of the invoice for her services. Moreover, the Hawaii Supreme Court held in *Tsuru* that conversion may be proven by demand and refusal, which is precisely what happened in this case.

■ Defendant argues that Plaintiff has not successfully demonstrated that he is entitled to summary judgment on the conversion claim. To support this argument, Defendant first argues that Plaintiff's declaration is legally insufficient, claiming that since the declaration does not state, "I declare under penalty of perjury *under the laws of the United States of America* that the foregoing is true and correct," his declaration is not competent evidence. The Court disagrees. As Plaintiff points out in his reply brief, 28 U.S.C. § 1746, which sets forth the language to be contained in an unsworn declaration, merely states that a declaration must "substantially" be in the form provided in the statute. Thus, although the statute includes the language "under the laws of the United States of America," the Court finds that this is not a rigid requirement. Furthermore, the Hawaii District Court has held, "[a]s long as an unsworn declaration contains the phrase 'under penalty of perjury' and states that the document is true, the verification requirements of 28 U.S.C. § 1746 are satisfied." *Kersting v. United States,* 865 F.Supp. 669, 676 (D.Haw.1994). Because Plaintiff's declaration states, "I declare under penalty of perjury that the

foregoing is true and correct," it complies with the statute, and is therefore valid.

■ Defendant next argues that Plaintiff's declaration must be stricken because it was written in English and Plaintiff cannot speak English. Defendant also claims that the declaration is defective because there is no evidence that Plaintiff's son, who translated the declaration, is a qualified legal translator or translated the declaration correctly. The Court rejects this argument. The Sixth Circuit recently held:

> [T]he United States argues that the declaration is not valid because Cruz does not provide any evidence that the declaration was translated to her from English to Spanish. This was necessary, it argues, because Cruz, who according to the United States speaks no English, would not have understood the contents of the declaration had it not been translated. We find no merit in this argument. Nothing in § 1746 requires that a non-English speaking affiant provide evidence that the declaration was translated into the affiant's native language before signing it. Moreover, we believe that such an argument would go to the weight of the declaration and not its admissibility.

*Collazos–Cruz v. United States,* 1997 WL 377037, *3 (6th Cir. July 3, 1997). The Court agrees with the reasoning of the Sixth Circuit. Defendant stated during his deposition that the declaration he signed had been translated to him. This is sufficient. Accordingly, the Court finds that Plaintiff's declaration is admissible as submitted.

■ Finally, Defendant argues that Plaintiff's motion for summary judgment on the conversion claim must fail because Plaintiff cannot prove his exclusive right to possession of the Bill of Lading, and fur-

ther cannot prove that Defendant wrongfully withheld possession of the Bill of Lading.[3] The Court again disagrees with Defendant.

It is undisputed that Plaintiff is the sole lawful owner of the Big Apple III. As the sole lawful owner, Plaintiff alone had the right to possession of the Bill of Lading. However, Defendant argues that she had some sort of "legal or equitable lien claim" on the Big Apple III, and claims that, as a result, she had a right to withhold the Bill of Lading. The Court finds this argument unpersuasive.

The invoice submitted by Defendant to Plaintiff for monies allegedly owed to her states that it is for "overseeing the design, constuction [sic], launching, optimization, and participation in 3 regattas (RNZYS trial, Asahi Cup and Kenwood Cup) of the yacht Big Apple III." *See* Pl.'s Mem. in Supp. of Mot. for Partial Summ.J. at Exh. 6. These invoiced charges are entirely unrelated to the Bill of Lading. As Plaintiff correctly points out, a person cannot steal the property of another because she believes she is owed money by that person. Yet that is precisely how Defendant is attempting to justify her actions here. The Court finds no evidence that the Big Apple III was ever offered as security for any potential debts owing to Defendant. Even assuming, arguendo, that Defendant is owed the $83,954 by Plaintiff, she still did not have the right to withhold the Bill of Lading in order to force Plaintiff to make the payment.[4] Finally, although Defendant cites two Hawaii cases to support her "equitable lien" argument, those cases involved findings *by the court* that an equitable lien or similar remedy was appropriate, and are therefore distinguishable from this case, where Defendant "took the law into her own hands" by withholding the Bill of Lading from Plaintiff. *See Manu-*

---

**3.** As part of this argument, Defendant argues that under Japanese law, the withholding of the Bill of Lading was proper. However, as the Court has determined that Hawaii law properly governs Plaintiff's claims, it does not address this argument.

**4.** Of course, the Court has not been asked at this stage to address the merits of Defendant's claims for compensation.

facturers Life Ins. Co. v. Von Hamm–Young Co., 34 Haw. 288, 1937 WL 4460, *10 (1937); Small v. Badenhop, 67 Haw. 626, 639, 701 P.2d 647 (1985). Simply stated, Defendant's withholding of the Bill of Lading was wrongful. Accordingly, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment as to the conversion claim.

### B. *Fraud*

■ Plaintiff next argues that he is entitled to summary judgment on his fraud claim. Under Hawaii law:

> [t]he elements of fraud include: (1) false representations made by the defendant; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon them; and (4) plaintiff's detrimental reliance.

Larsen v. Pacesetter Systems, Inc., 74 Haw. 1, 30, 837 P.2d 1273 (1992).

■ Fraud can be perpetrated by nondisclosure as well as by affirmative misrepresentation. As explained in the Restatement (Second) of Torts:

> A duty to disclose may arise when (a) *a party to a business transaction is in a fiduciary relationship with the other party;* or (b) disclosure would be necessary to prevent a partial or ambiguous statement of fact from becoming misleading; or (c) subsequent information has been acquired which a party knows will make a previous representation untrue or misleading; or (d) a party knows a false representation is about to be relied upon; or (e) a party knows the opposing party is about to enter into the transaction under a mistake of fact and because of the relationship between them or the customs of trade or other objective circumstances would reasonably expect a disclosure of the facts.

Restatement (Second) of Torts, § 551(2) (emphasis added).

■ "Agency is the *fiduciary relation* which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to

his control, and consent by the other so to act." Restatement (Second) of Agency § 1 (1958) (emphasis added). Hawaii courts recognize that "[a]n agent's fiduciary duty, which carries with it the duty of full, fair, complete, and timely disclosure of material facts, is among the most important obligations in our legal system." Han v. Yang, 84 Hawai'i 162, 173, 931 P.2d 604 (Haw.App.1997). "[A]n agent must make the fullest disclosure of all material facts which might affect his principal's decision-making." Pollack v. Lytle, 120 Cal.App.3d 931, 940, 175 Cal.Rptr. 81 (1981). As explained by the Hawaii Supreme Court, "an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have." Property House, Inc. v. Kelley, 68 Haw. 371, 377, 715 P.2d 805 (1986).

The thrust of Plaintiff's argument is that, as Plaintiff's agent, Defendant had a duty to disclose that she no longer intended to act as his agent, but instead, intended to further her own interests when she agreed to take possession of the Bill of Lading.

While the Court agrees that, as Plaintiff's agent, Defendant had a duty to disclose any interests adverse to Plaintiff's, the Court finds that there is a genuine issue of material fact as to whether or not Defendant failed to do so. Since Plaintiff is the moving party in this case, all factual disputes are to be construed in Defendant's favor. Defendant has asserted that, at the time she agreed to take possession of the Bill of Lading, and at the time she actually did take possession of it, she had no intention to withhold it from Plaintiff. Defendant further asserts that she formed this intent, in good faith, only after being advised to do so by her attorney. Finally, Defendant asserts that once she decided to withhold the Bill of Lading, she informed Plaintiff of her reasons for doing so. Because there is a genuine issue of material fact regarding whether Defendant commit-

ted fraud by failing to disclose her adverse intentions to Plaintiff, the Court DENIES Plaintiff's Motion for Partial Summary Judgment on the fraud claim.

### C. *Punitive Damages*

 Finally, Plaintiff argues that he is entitled to summary judgment on his punitive damages claim. The purpose of punitive damages is not to compensate a plaintiff, but rather, to punish a defendant "for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future." *Masaki v. General Motors Corp.*, 71 Haw. 1, 6, 780 P.2d 566 (1989). In order to recover punitive damages:

> the plaintiff must prove by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.

*Kunewa v. Joshua*, 83 Hawai'i 65, 73, 924 P.2d 559 (1996). The Hawaii Supreme Court has instructed that "the proper measurement of punitive damages should be the degree of malice, oppression, or gross negligence which forms the basis for the award and the amount of money required to punish the defendant. . . ." *Kang v. Harrington*, 59 Haw. 652, 663, 587 P.2d 285 (1978).

Here, the Court finds that summary judgment is inappropriate on Plaintiff's punitive damages claim, because there is a genuine issue of material fact as to whether Defendant acted with the degree of malice and oppression necessary to justify such an award. First, the Court is unpersuaded at this point that Defendant acted

wantonly and recklessly. Furthermore, Defendant has represented that she withheld the Bill of Lading, upon advice of her attorney, because of her belief that she had a legal basis for doing so under Japanese law. As such, the Court cannot say that there is no genuine issue of material fact as to this claim, and accordingly DENIES Plaintiff's Motion for Partial Summary Judgment on the punitive damages claim.

### III. *Defendant's Claim for Punitive Damages*

 Plaintiff also argues that Defendant's claim for punitive damages in the Counterclaim must be dismissed for failure to state a claim.[5] However, the Court finds that this issue is moot. In a letter to opposing counsel dated July 8, 1999, Defendant's attorney represented that "upon a review of *Francis v. Lee Enterprises, Inc.*, we are willing to withdraw Wada's punitive damages claim for breach of employment contract and/or unjust enrichment relating thereto." (citation omitted). At the hearing, Defense counsel again acknowledged that punitive damages are not allowed under Hawaii law.[6]

Based upon representations by Defense counsel that the punitive damages claim in the Counterclaim will be withdrawn, the Court finds that this issue is moot.

### CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Partial Summary Judgment.

IT IS SO ORDERED.

---

**5.** Plaintiff characterizes this motion as a Motion for Judgment on the Pleadings. However, the Court will refer to this as a Motion to Dismiss.

**6.** Defense counsel is correct. Under Hawaii law, it has long been settled that punitive

damages are not recoverable for breach of contract. *See Francis v. Lee Enterprises, Inc.*, 89 Hawai'i 234, 241, 971 P.2d 707 (1999). Likewise, punitive damages are not recoverable in an action for restitution. *See Hong v. Kong*, 5 Haw.App. 174, 182, 683 P.2d 833 (1984).